**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JEFFREY DAY, | : | Case No. 3:16-cv-00437 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| KIM DELONG, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.      Introduction

Plaintiff Jeffrey Day had the unfortunate experience of being a passenger in a car involved in a traffic accident.  His troubles mounted after the accident when he was arrested for obstructing official business and taken directly to jail without stopping at the hospital.  He spent the next five days in jail.  Upon his release, he went to the hospital where he was diagnosed with a fractured pelvis.  Surgical repair followed.

Day asserts (in part) that two Trotwood, Ohio Police Officers—Sergeant Kim DeLong and Officer Kevin Wagner—violated his rights under the U.S. Constitution by refusing to have him transported to the hospital at the time of his arrest.  The case is presently pending upon Defendants Delong, Wagner, and the City of Trotwood's

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

(Defendants') Motion for Judgment on the Pleadings (Doc. #30), Day's Memorandum in Opposition (Doc. #36), Defendants' Reply (Doc. #38), and the record as whole.

## II.     Factual Background

### A.     <u>Plaintiff's First Amended Complaint ("Complaint")</u>

Accepting Plaintiff's allegations as true, reveals the following.  On the day of the car accident, Day's fractured pelvis (a fractured right acetabulum) caused him extreme pain and made it very difficult for him to walk.  (Doc. #27, *PageID* #133).  His injuries "were serious and dangerous and required emergency medical treatment which needed to be addressed by law enforcement and other official medical personnel." *Id*. at 132. Despite this, Defendants DeLong and Wagner refused to have him undergo evaluation by a medical professional.  *Id*. at 132, 135.  They instead had him arrested and taken to jail, refusing all the while to have him taken to the hospital for immediate medical treatment. Upon reaching the jail, Defendants DeLong and Wagner forced Day to walk into the jail, "where he was thereafter placed in a wheelchair, booked into jail, and held in custody…." *Id*.

Day's Complaint asserts the following causes of action against Defendants DeLong, Wagner (and others):

1.     Medical Negligence against Sgt. Kim DeLong, Officer Wagner….

2.     Deprivation of Constitutional Rights, Deliberate Indifference to a Serious Medical Need pursuant to 42 U.S.C. [§] 1983….

3.     Deprivation of Constitutional Rights, Unconstitutional Policy, Failure to Train, Supervise, or Discipline pursuant to 42 U.S.C. [§] 1983 against … Sgt. DeLong in her personal and official capacity

4.      Malicious Prosecution/Abuse of Process by Sgt. DeLong in her individual
        capacity

5.[2]   False Arrest

Day seeks both compensatory and punitive damages.

**B.      Sergeant DeLong's and Officer Wagner's Reports**

Defendants seek judgment on the pleadings in their favor under Fed. R. Civ. P.

12(c).  Despite their apparent focus on the pleadings, they rely on materials attached to

their Answer, including Sergeant DeLong's written report concerning the accident and

Day's arrest.  She tells a story at odds with Day's allegations.  Sergeant DeLong

described what occurred at the scene of the car accident:

> I watched Mr. Day attempt to get into the black Impala several times
> and I had to tell him to stop.  He said he was helping his friend one
> time and another time told me he was getting a shirt.  I asked him if he
> was in the car during the crash and he told me no.  He said his friend
> called him after the crash and he came in another car, then pointed to
> a blue car that was parked in the roadway…. He was very adamant
> that he was not in the car that crashed and had no explanation why he
> wanted into the car so badly….

(Doc. #29, *PageID* #165).  According to Sergeant DeLong, witnesses at the scene told

her that Day had been a passenger in one of the cars involved in the accident.  But, Day

informed Sergeant DeLong that he had been in a nearby bar when his friend phoned him

about the accident.  He got into a blue car with another friend and rode to the scene of the

accident.  Day then pointed to a blue car parked in the roadway (presumably near the

accident site).

---

[2] The Complaint miscounts Plaintiffs' Fifth Cause of Action by indicating it is their Sixth Cause of
Action.

The driver of the blue car told Sergeant DeLong that she was driving down the road, and there was a crash in the middle of the road. When Sergeant DeLong asked the driver of the blue car about bringing Day to the scene of the accident, "she said no such thing happened and Mr. Day was not in her car." *Id*.

Sergeant DeLong also watched as Officer Wagner searched Day for weapons. She saw Officer Wagner find a can of beer in Day's pocket. She further noted that Day was intoxicated. No field sobriety tests were performed because Day was uncooperative. *Id*.

Officer Wagner transported Day to the Montgomery County Jail. He confirmed in his written report (also attached to Defendants' Answer) that he "transported the two arrestees from the crash scene to the county jail without issues." *Id*. at 166. There is no further information in Officer Wagner's report about Day.

Another document attached to Defendants' Answer indicates that Day refused medical treatment at the scene of the accident when it was offered by a Trotwood Fire & Rescue EMT. (Doc. #29, *PageID* #167). It appears that Day signed this document.

## C.      State Criminal Proceedings

Day states in his Complaint, "All charges brought against [him] were terminated in [his] favor … after an unreasonable delay." *Id*. at 142.

Defendants explain in their Motion that on April 20, 2017, a Judge in the Montgomery County Municipal Court found Day guilty of obstructing official business. They attach to their Motion a copy of the Judge's Decision and Entry. (Doc. #30, *PageID*#189).

Day responds that the criminal proceedings have been resolved in his favor

because the criminal charge was withdrawn by the prosecutor.  He attaches to his Memorandum in Opposition a copy of a Decision and Entry dated July 12, 2017, granting him a new criminal trial.  The Judge instructed the clerk to schedule the matter for a jury trial.  The Judge also recused herself from the case.  (Doc. #36, *PageID* #s 233-34).

Day argues in his Memorandum, "If the Court is going to consider extraneous material with regard to this motion, it should consider [Officer] Wagner's testimony at Mr. Day's trial, where he testified that Mr. Day began to complain of pain in his hip on the ride to the Montgomery County Jail.  [Officer] Wagner also testified that even though it had become clear during the trip to the jail that Mr. Day was injured, he 'wanted to see if the jail would take him," rather than bearing the responsibility for taking Mr. Day to the hospital himself…."  (Doc #36, P*ageID* #217) (internal citations omitted).  Day has also filed "the videos of [his] arrival at the Montgomery County Jail."  (Doc. #27, *PageID* 134 (referring to Doc. #4)).

III.    **Motions for Judgment on the Pleadings**

To determine whether a complaint survives a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), courts "'must construe the complaint in the light most favorable to plaintiff,' 'accept all well-pled factual allegations as true[,]' and determine whether the 'complaint states a plausible claim for relief[.]'"  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting, in part, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (other citation omitted).  The complaint does not need "detailed factual allegations,'" *Iqbal*, 556 U.S. at 678, but it must contain "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'"  *Albrecht*,

717 F.3d at 893 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' A plaintiff falls short if she pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct....'" *Id.* (quoting, in part, *Iqbal*, 556 U.S. at 678, 679).

"While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'" *McGath v. Hamilton Local School Dist.*, 848 F.Supp.2d 831, 836-37 (S.D. Ohio 2012) (Graham, D.J.) (quoting, in part, *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)) (other citation omitted). Yet, care must be taken when considering such evidence:

> If, on a motion under Rule…12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. Civ. P. 12(d).

## IV.     Deliberate Indifference to Serious Medical Needs

### A.     <u>Federal Claims Generally</u>

The jurisdictional engine driving Day's Complaint is its federal claims. 28 U.S.C. § 1331. His state-law claims tag along by way of supplemental jurisdiction. 28 U.S.C. § 1367(a). Consequently, Day's federal constitutional claims are at issue first.

To state a plausible federal constitutional claim under 42 U.S.C. § 1983, Day must allege facts showing that Defendants deprived him of a right secured by the Constitution or laws of the United States, and that they did so under the color of state law. *See Sumpter v. Wayne County*, 868 F.3d 473, 494 (6th Cir. 2017); *see also Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Defendants do not challenge Day's assertion that Sergeant DeLong and Officer Wagner acted under the color of state law. They instead find shortcomings in Day's federal constitutional claims and seek shelter under the doctrine of qualified immunity.

**B.     Fourth or Fourteenth Amendment**

**1.**

Day invokes several constitutional grounds in support of his claim that Defendants DeLong and Wagner were deliberately indifferent to his serious medical needs. He claims:

> 42. Day had a right to receive medical treatment at the scene of his unlawful arrest… pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.
>
> 43. [Officers] DeLong and Wagner had a duty to have Day evaluated by a paramedic or emergency medical technician at the scene of the accident and/or have him transferred to a hospital upon learning that either Day had been a passenger in one of the vehicles during the collision or that Day was in physical pain. Day exhibited signs of obvious injury, as Wagner stated, "he was hopping around like a rabbit."

(Doc. #27, *PageID* #137).

The Eighth Amendment does not provide an independent basis for Day's denial-of-medical-care claim against Defendants DeLong and Wagner because he was not a

convicted prisoner during the time they interacted with him. *See Aldini v. Johnson*, 609

F.3d 858, 865 n. 5 (6th Cir. 2010). Furthermore, Day's allegations against DeLong and

Wagner concern events that occurred before they handed him over to jail personnel. Day,

consequently, was not incarcerated at the time DeLong and Wagner denied him medical

care. The pertinent events presently at issue began when DeLong and Wagner were

investigating Day's conduct at the scene of the accident, continued through his arrest and

transportation to the mail, and stops when Officer Wagner handed Day over to jail

personnel. Does the Fourth or Fourteenth Amendment apply during this time frame?

The parties offer different conclusions: Day urges the Court to apply the Fourth

Amendment's lower objective-reasonableness standard while Defendants rely on the

Fourteenth Amendment's stricter "deliberate indifference" standard.

Day's denial-of-medical-care claim against DeLong and Wagner arguably finds its

source in the Fourth Amendment's guarantee that all seizures by police be reasonable.

*See Boone v. Spurgess*, 385 F.3d 923, 933 (6th Cir. 2004). After all, a "seizure" under

the Fourth Amendment—and the accompanying mandate of reasonable police conduct—

"continues at least 'throughout the time the person remains in the custody of the arresting

officers.' " *Id.* (quoting, in part, *Johnson v. City of Cincinnati,* 310 F.3d 484, 492 (6th

Cir. 2002)). Additionally, "[a] seizure can be 'unreasonable' for any number of reasons,

and the guarantee of reasonableness in the manner of a seizure does not seem to allow for

a distinction between a claim that an officer used excessive force and a claim that the

same officer denied medical care to a detainee." *Id*.

Still, the Fourteenth Amendment might apply to Day's denial-of-medical-care claim against Defendants DeLong and Wagner because the Sixth Circuit has used it in this context but without noting the conflict (between Circuit-level cases applying either the Fourth or Fourteenth Amendment). *Boone*, 385 F.3d at 934 (citing as examples *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir 2003); *Lily v. Watkins,* 273 F.3d 682, 685–86 (6th Cir. 2001)). District Courts within the Sixth Circuit have likewise "split on the issue." *Id*. (citations omitted).

On the date Defendants filed their Rule 12(c) Motion, the parties did not have the benefit of the Sixth Circuit Court of Appeals clarification in *Esch* that it has "never squarely decided whether the Fourth Amendment's objective reasonableness standard can ever apply to a plaintiff's claims for inadequate medical treatment."[3] *Esch v. County of Kent*, 699 F. App'x 509, 514 (6th Cir. 2017) (citations omitted). Although *Esch* is an unpublished case, it provides a roadmap for considering the issue in its discussion of previously published cases. *Esch* explained parenthetically that *Boone*, 385 F.3d at 934, previously noted "the uncertainty regarding whether the Fourth Amendment applies to inadequate medical care cases, but declin[ed] to resolve the question." *Id*. (also citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.3 (6th Cir. 2005)). *Esch* then surveyed cases with different holdings and observed, "We have implied in *dicta* that inadequate medical treatment claims are just as cognizable under the Fourth Amendment

---

[3] Two concurring Judges in *Esch* pressed for applying the Fourteenth Amendment to a pretrial detainee's denial-of-medical-care claim. 2017 WL 3046009, at *7-*8.

as excessive force claims." *Id*. at 514-15 (emphasis in original) (citing *Boone*, 385 F.3d at 934).

Yet, the roadmap in *Esch* does not end at either constitutional destination. The Sixth Circuit instead declined to specify whether the Fourth or Fourteenth Amendment applied because the plaintiff could not meet "both the deliberate indifference and objective reasonableness standards." *Id*. at 515. The question therefore remains, after *Esch*, whether the Fourth or Fourteenth Amendment applies to Day's denial-of-medical-care claim against arresting officers Defendants DeLong and Wagner.

To support his contention that the Fourth Amendment applies, Day relies on *Burgess v. Fisher*, 735 F.3d 462 (6th Cir. 2013) where the district court erred by not applying the Fourth Amendment's test to an excessive-force claim brought by a pretrial detainee. The Court of Appeals found it "clearly established in 2010 that the dividing line between the Fourth and Fourteenth Amendment zone of protection was the probable cause hearing for warrantless arrests." *Id*. at 474 (discussing *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2013)). Day's reliance on *Burgess* is misplaced because *Burgess* drew the dividing line between the Fourth and Fourteenth Amendments in the context of an excessive-force claim, not a denial-of-medical-care claim. As *Esch* acknowledges, the Sixth Circuit has not yet decided whether the Fourth Amendment applies to a pretrial detainee's medical-based claim. 699 F. App'x at 514.

Defendants maintain that the Fourteenth Amendment applies to Day's medical claim based on *Shoup v. Doyle*, 974 F.Supp.2d 1058 (S.D. Ohio 2013) (Rice, D.J.). They are correct that *Shoup* addressed the plaintiff's (a pretrial detainee's) denial-of-medical-

care claim under the  Fourteenth Amendment.  *Id*. at 1082-84.  *Shoup*, however, pre-

dated *Esch* and the Sixth Circuit's acknowledgment that it had "never squarely decided

whether the Fourth Amendment's objective reasonableness standard can ever apply to a

plaintiff's claims for inadequate medical treatment."  *Esch*, 699 F. App'x at 514.  It

appears, moreover, that the plaintiff in *Shoup* may have advanced her denial-of-medical-

care claim under the Fourteenth Amendment, not the Fourth Amendment.  974 F.

Supp.2d at 1082 ("she alleges that [defendants'] failure to provide medical care arose

after her seizure, [w]hile she was in custody,' at which point the protections of the Due

Process Clause have attached." (quoting, in part, Shoup's Complaint)).  And, *Shoup* does

not specifically address whether or not the Fourth Amendment applies to her denial-of-

medical-care claim.  *Id*. at 1082-84.  *Shoup*, therefore, offers no insight into whether the

Fourth or Fourteenth Amendment applies in the present case.

Additionally, in light of the discussion of this issue in *Esch*, 699 F. App'x at 514-

15, the parties' remaining cases do not constitute controlling or convincing authority to

resolve whether the Fourth Amendment's objective-reasonableness standard or the

Fourteenth Amendment's deliberate-indifference standard applies to Day's claim denial-

of-medical-care claim against Defendants DeLong and Wagner.

Following the Sixth Circuit's approach, it is potentially more efficient to begin

with Day's denial-of-medical-care claim under the Fourth Amendment's objective-

reasonableness standard.  If this claim fails, it cannot survive a Fourteenth Amendment

deliberate-indifferent analysis.  *See Smith v. Erie County Sheriff's Dept*., 603 F. App'x

414, 419 (6th Cir. 2015) ("behavior that does not rise to the level of a Fourth Amendment

violation cannot offend the Fourteenth."); *e.g., Boone*, 385 F.3d at 934; *Esch*, 699 F.

App'x at 514-15.

**2.**

To support a denial-of-medical-care claim under the Fourth Amendment, a

plaintiff must describe conduct that was objectively unreasonable under the totality of the

circumstances without the benefit of 20/20 hindsight.  *See Esch*, 699 F. App'x at 515.

Four questions inform the inquiry:

> (1) whether the officer has notice of the detainee's medical needs; (2)
> the seriousness of the medical need; (3) the scope of the requested
> treatment; and (4) police interests, including administrative,
> penological, or investigatory concerns.

*Id*. (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 530-31 (7th Cir. 2011) (citation

omitted).  "[T]he severity of the medical condition under this standard need not, on its

own, rise to the level of objective seriousness required under the Eighth and Fourteenth

Amendments.  Instead, the Fourth Amendment's reasonableness analysis operates on a

sliding scale, balancing the seriousness of the medical need with the third factor—the

scope of the requested treatment."  *Id*. (citing *Ortiz*, 656 F.3d at 530-31).

Defendants contend that if Day's claim falls under the Fourth Amendment, he is

not entitled to relief.  Defendants assert that Day does not allege that he displayed any

evidence of injury at the scene of the accident or had any obvious physical injury that

would have been sufficiently obvious to Defendants DeLong and Wagner.  Rather,

Defendants say, Plaintiff simply argues in his Complaint that DeLong and Wagner "'had

a duty to have Day evaluated by a medical professional.'" (Doc. #38, *PageID* #437 (quoting, in part, Doc. #27, *PageID* #135)).

Contrary to Defendants' view of the Complaint, Day's allegations, when, taken as true and construed in his favor, show that his conduct at the scene and the information known to Defendants should have alerted them, or a reasonable officer under the totality of the circumstances, that he needed medical care for what was potentially, if not likely, serious injury. He alleges that he "exhibited obvious signs of injury" at the scene of the accident, he was "unable to walk," "he was in physical pain." (Doc. #27, *PageID* #137). He further alleges that Defendants knew he had been a passenger in one of the vehicles involved in the accident. And, he asserts earlier in his pleading that the injury he received as a result of the accident "caused him extreme pain and made it very difficult for him to walk." *Id*. at 132. Defendants' factual assertions to the contrary do not negate these alleged facts.

Defendants point out that Day acknowledges he was "hopping around like a rabbit." *Id*. at 137. Defendants infer from this that Day was not injured or engaged in conduct that would not lead Defendants to reasonably conclude had a serious injury that needed medical attention. Defendants overlook, however, that Day alleges that Defendant Wagner stated Day was "hopping around like a rabbit." It is not known what Defendant Wagner actually meant by this metaphor but it must be read in context rather than isolation. Day alleges that he "exhibited signs of obvious injury, as [Defendant] Wagner stated, 'he was hopping around like a rabbit.'" *Id*. Construing this in Day's favor, the "hopping around like a rabbit" is an example of how he was exhibiting signs of

13

obvious injury at the scene of the accident. At this early, pleading stage of the case, the hopping-rabbit metaphor cannot be construed, as Defendants' do, to mean that Day showed no obvious sign of injury.

Defendants offer additional facts. They say, "Defendants DeLong and Wagner noted that Plaintiff was able to walk freely around the scene of the accident, and even attempted to get back into the vehicle in which he had been a passenger." *Id*. at 174-75. They further maintain that medics tended to Day at the scene and he voluntarily refused treatment; he denied he was involved in the crash; he was capable of walking around the scene of the accident; he attempted to show DeLong his phone messages in an attempt to convince her he was not involved in the accident; and, he did not tell DeLong that he was injured or needed medical attention.

Defendants build their assertions of fact on evidence outside the pleadings—specifically, the materials they attach to their Answer, including DeLong's and Wagner's written reports and the EMT form attached to their Answer. Rule 12 does not allow the use of such extra-pleading evidence. Instead, the best Defendants might hope for is an Order converting their Rule 12(c) Motion to a motion for summary judgment under Rule 56. *See* Fed. Civ. P. 12(d). Prudence and precision are warranted when a party submits extra-pleading evidence in connection with a Rule 12(c) motion because "the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc*., 452 F.3d 494, 503 (6th Cir. 2006). District courts are not required to convert a Rule 12(c) motion

to a summary judgment motion when evidence outside the pleadings is presented.  *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (quoting, parenthetically, 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004) ("'The district court remains free to refuse to accept materials outside the pleadings in order to keep the motion under Rule 12(c).'")).

Defendants contend that their written reports and the EMT form may be considered under Rule 12(c) because these documents are attached to their Answer and are therefore part of the pleadings.

Defendants correctly recognize their Answer is a pleading.  *See* Fed. R. Civ. P. 7(a)(2).  But, their written reports and the EMT form, although attached to a pleading, constitute materials outside the pleadings because rather than simply verifying the factual allegations in Day's Complaint, their evidence offers new and different facts.  *Cf. Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) ("when affidavits do 'nothing more than verify the complaint,' and when they 'add[ ] nothing new, but, in effect, reiterate[ ] the contents of the complaint itself,' they are not truly 'materials ... outside the pleading.'"  (quoting, in part, *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993))).  It would be error to consider such evidence without converting Defendants' Rule 12(c) Motion to motion for summary judgment and providing a reasonable time for discovery.  *See* Fed. R. Civ. P. 12(d).

Defendants contend that consideration of the evidence they attach to their Answer is proper in light of the rule that "[i]n considering a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer,

and <u>any written instruments</u> attached as exhibits." *Felix v. Dow Chemical Co.*, 2008 WL 207857, at *1 (S.D. Ohio 2008) (Graham, D.J.) (emphasis added). Defendants maintain that their written reports and the EMT form constitute pleadings because they fall into the category of "any written instruments attached as exhibits" to their Answer. Their argument implicitly emerges from Rule 10(c), which provides, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

Contrary to Defendants' contentions, the written documents they attach to their Answer are not the type of legal documents contemplated by Rule 10(c)'s reference to "written instruments."

> An "instrument" is defined by Black's Law Dictionary (9th ed. 2009) as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." As discussed in *Rose v. Bartle,* 871 F.2d 331, 340 n. 3 (3d Cir.1989), types of exhibits ordinarily incorporated within the pleadings under Fed. R. Civ. P. 10(c), generally include contracts, notes, and other "writing[s] on which [a party's] action or defense is based." *See also DeMarco v. DepoTech Corp.,* 149 F.Supp.2d 1212, 1219 (S.D.Cal.2001) (defining "written instrument" to include examples "such as a deed, will, bond, lease, insurance policy or security agreement") (citations omitted); *Benzon v. Morgan Stanley,* No. 3:03–0159, 2004 WL 62747 at *2 (M.D. Tenn. Jan.8, 2004).

*Copeland v. Aerisyn, LLC*, No. 1:10cv78, 2011 WL 2181497, at *1 (E.D. Tenn. 2011).

Defendants' written narrative reports and the EMT form are not on par with a contract, deed, will, promissory note, or other such "written instruments" within Rule 10(c).

Defendants essentially ask the Court to accept as true the version of the events they describe in their written reports and the EMT form. This is contrary to Rule 12(c)'s mandate that the facts alleged in Day's Complaint be taken as true and that his Complaint

be construed in his favor.  *See Albrecht*, 617 F.3d at 893.  Defendants' present reliance on their own reports and version of the events blurs the line between Rule 12(c) motions and motions for summary judgment.  *See Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3rd Cir. 1989).

Defendants also argue that consideration of their written reports is warranted when ruling on their Rule 12(c) Motion because their allegations are central to Day's claims and because Day's Complaint specifically refers to the details of the accident that are contained and within the written reports and EMT form.  These arguments lack merit. Defendants' written reports are not central to Day's claims in the same manner that written instruments—a contract, will, promissory note, or share certificate—might be. Defendants' evidence tells their version of the events Day describes in the Complaint rather than merely confirming his well-pled allegations.  Day's Complaint, moreover, does not cite to or rely on Defendants' written report or the EMT form.  The fact that the Complaint and Defendants' evidence concern the same accident does not entitle Defendants to rely on their version of the events on a Rule 12(c) Motion—again, it is the allegations in Day's Complaint that control.  *See Albrecht*, 617 F.3d at 893.  And, again, Defendants' argument lacks merit because it blurs the line between a Rule 12(c) motion and a motion for summary judgment.  Consequently, Defendants' reports and the EMT form are not part of the pleadings and may not be considered when analyzing Defendants' Rule 12(c) Motion.

The effect of this is that the Court should not accept as true at this stage of the case Defendants' assertions that Day was able to walk freely around the scene of the accident

and attempted to get back into the vehicle in which he had been a passenger medics; medics tended to him at the scene and he voluntarily refused treatment; he denied he was involved in the crash; he showed DeLong his phone messages in an attempt to convince her that he was not involved in the accident; and, he did not tell DeLong that he was injured or needed medical attention.

Accordingly, because Defendants' rely on facts derived from evidence outside the pleadings, and because Defendants improperly construe Day's Complaint in their favor, their Rule 12(c) Motion fails to show that judgment in their favor is warranted on Day's Fourth Amendment claim.

**3.**

Turning to Day's claim under the Fourteenth Amendment, Defendants argue that Day cannot show they had a "culpable state of mind in denying medical care" because he was never denied medical care. (Doc. #30, *PageID* #174).

A two-part test—containing objective and subjective standards—applies to determine if Defendants were deliberately indifferent to Day's serious medical needs. *Burgess*, 735 F.3d at 476 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective standard asks "whether the plaintiff had a 'sufficiently 'serious medical' need.'" *Id.* (quoting, in part, *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). The subjective standard determines "whether the defendant had a 'sufficiently culpable state of mind.'" *Id.* (quoting, in part, *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "There must be a showing of more than mere negligence, but something less than specific intent to

harm or knowledge that harm will result is required." *Id*. (citing *Farmer*, 511 U.S. at 835).

Defendants assert that Day was offered medical treatment but he declined any treatment or medical evaluation. They point out that Day had a right to refuse medical treatment and they could not have been justified in forcing him to undergo medical treatment against his will. Defendants base these contentions on the EMT form attached to their Answer. *See* Doc. #30, *PageID* # 174 (citing Doc. #29, *PageID* #167)). Defendants contend that Day has failed to plead that DeLong and Wagner had the requisite culpable state of mind to support a Fourteenth Amendment violation.

Defendants fall short here by resting their factual allegations on the evidence attached to their Answer. *See id*. (citing Doc. #29, *PageID* #165). For the reasons stated above, *supra*, § IV(B)(2), Defendants' written reports and EMT form are documents outside the pleadings and may not be considered in analyzing Defendants' Rule 12(c) Motion.

Defendants also contend that Day's Complaint fails to plead any facts to indicate he was obviously injured. This argument lacks merit in light of his allegations that he "exhibited obvious signs of injury" at the scene of the accident, he was "unable to walk," "he was in physical pain" (Doc. #27, *PageID* #137), Defendants knew he had been a passenger in one of the vehicles involved in the accident; and the injury he received as a result of the accident "caused him extreme pain and made it very difficult for him to walk." *Id*. at 132. Although Defendants also construe Day's allegation that Wagner stated he (Day) was "hopping around like a rabbit," as explained above, this comment

must be construed in Day's favor and in light of its connection to Day's allegation that he "exhibited signs of obvious injury …." *Id.* Viewed in this light, it is reasonable to infer that the "hopping around like a rabbit" statement constitutes an example of how he was exhibiting signs of obvious injury at the scene of the accident. At this early, pleading stage of the case, the hopping-rabbit metaphor cannot be construed, as Defendants' do, to mean that Day showed no obvious sign of injury.

Defendants argue that *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001) is analogous to the present case. The plaintiff in *Watkins* had ingested drugs. When officers asked if he wanted medical treatment, he refused. *Watkins*, however, was a summary-judgment case where it was established that the plaintiff had refused medical treatment at the time of his arrest and while he was in jail. 273 F.3d at 884-85, 886. Unlike *Watkins*, the current posture of the present case does not allow Defendants to rely on evidence outside the pleadings to show that Day refused medical treatment.

Accordingly, because Defendants' rely on facts derived from evidence outside the pleadings, and because Defendants improperly construe Day's Complaint in their favor, their Rule 12(c) Motion fails to show that judgment in their favor is warranted on Day's Fourteenth Amendment claim.

## 4.

Defendants contend that qualified immunity protects them from Day's constitutional claims because he cannot point to case law showing that a reasonable officer would have known he was violating the law by not taking Day to the hospital when he waived treatment.

"Police enjoy qualified immunity unless (1) the facts alleged show that the police violated a constitutional right; and (2) the right was clearly established." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

An arrestee's constitutional right to receive medical treatment for his serious medical conditions was clearly established before Day was arrested and not taken to the hospital in late November 2015. This is true regardless of whether it was the Fourth or the Fourteenth Amendment that grounded this right. *Watkins*, 273 F.3d at 685-86 ("Under the Fourteenth Amendment Due Process Clause…, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."); *see Boone*, 385 F.3d at 934 "there seems to be no logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment."; *see also Esch*, 699 F. App'x at 514 -15 (and published cases cited therein) (applying Fourth Amendment analysis to claim of inadequate medical care).

Defendants misframe the issue by including their allegation that Day waived medical treatment. This factual allegation relies on the EMT form attached to Defendants' Answer and is not, therefore, a proper consideration in a Rule 12(c) analysis.

The facts Day alleges in his Complaint, when taken as true, construed in his favor, and viewed in the totality of the circumstances, suffice to raise a plausible claim that Defendants refused to have him taken to the hospital despite knowing he had a serious medical need in violation of his Fourth or Fourteenth Amendment rights. Defendants,

therefore, are not entitled to qualified immunity at this stage of the case. *See Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) ("it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point…, that point is usually summary judgment and not dismissal under Rule 12." (internal quotation marks and citations omitted)).

## V.     **False Arrest and Malicious Prosecution**

Day claims that Defendants falsely arrested him without probable cause. He further claims, "Defendant DeLong initiated criminal proceedings against [him] for a violation of Ohio Revised Code Section 2921.31, obstructing official business, a second degree misdemeanor." *Id.* at 141. He alleges that Defendant DeLong had charges brought against him, and continued to prosecute those charges, despite having knowledge that he had not committed any crime. According to Day, "Defendant DeLong…, set in motion legal proceedings in proper form [sic] and without probable cause to believe [he] had committed a crime. The legal processes and proceedings against [him] were set in motion, in part, to punish [him] for his inability to assist in the investigation of the motor vehicle collision…." (Doc. #27, *PageID* #141).

"To state a valid federal civil rights claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts meeting four elements: '(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff

suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.'" *Thornton v. City of Columbus*, 171 F.Supp.3d 702, 710 (S.D. Ohio 2016) (Marbley, D.J.) (quoting, in part, *Johnson v. Moseley*, 790 F.3d 649, 654 (2015)).

Defendants contend that Day has failed to assert a plausible malicious-prosecution claim because he has failed to plead that Defendant DeLong participated in the decision to prosecute him. But, Day alleges in his Complaint that Defendant DeLong "initiated criminal proceedings against [Day] for …" obstruction of justice. (Doc. #27, *PageID* #141). Day further alleges, "Defendant DeLong had criminal charges brought against Plaintiff despite having knowledge that he had not committed any criminal offense and then continued to prosecute said charges." *Id*. Accepting these allegations as true, Day's Complaint plausibly asserts that Defendant DeLong participated in the decision to prosecute him.

Defendants next contend that Day's malicious-prosecution claim and his false arrest claim fail because Defendant DeLong had probable cause to arrest Day for obstructing official business. Defendants' problem, however, is that they improperly rely at this stage of the case on Defendant Delong's version of the events that occurred at the time of the arrest. As a result, Defendants' present attempt to establish probable cause lacks merit.

Defendants next argue that the state criminal proceedings against Day were not terminated in his favor. Day contends otherwise based on the July 2017 Decision and

Entry, which granted him a new criminal trial and directed the matter to be scheduled for a jury trial. (Doc. #36, *PageID* # 233).

Neither party is correct, at least not presently. The Decision and Entry (which is proper to consider here as a public record, *McGath*, 848 F.Supp.2d 831, 836-37) reveals that the state criminal proceeding against Day has not concluded but is instead pending upon a new jury trial. He still faces the possibility that, based on the present record of this case, he could be found guilty at trial, a verdict he might then appeal, leaving much unknown about the fate of the criminal case pending against him. The proper procedural course in this situation is to stay Day's malicious-prosecution claim pending the outcome of the pending criminal charge against him. *See Gray v. Hampton*, 2017 WL 5194582, *3-*4 (E.D. Ky. 2017).

Accordingly, Defendants are not entitled to judgment in their favor on Day's § 1983 false arrest claim. Defendants are also not entitled to judgment in their favor on Day's § 1983 malicious-prosecution claim, but this claim should be stayed pending the outcome of Day's pending state criminal charge. *See id.*

VI.    **Remaining Matters**

Defendants Delong, Wagner, and City of Trotwood maintain that they are entitled to statutory immunity under Chapter 2744 of the Ohio Revised Code as to Day's claims of medical negligence, malicious prosecution, and abuse of process. Defendants appear to have overlooked Day's false arrest claim in this argument but it is assumed in what follows that they consider false arrest to part and parcel of Day's state-law claims.

24

Immunity granted under Chapter 2744 applies to state-law claims, not to constitutional claims brought under § 1983. *Pettry v. City of Parma*, No. 1:14cv01667, 2015 WL 5437772, at *2 (N.D. Ohio 2015). Additionally, it is not apparent at this early stage of the case whether the Court will exercise supplemental jurisdiction over any of Day's state-law claims. Concerns of efficient case and docket management thus advise to hold Defendants' state-immunity arguments in abeyance pending adjudication of Day's federal claims. *See York v. Lucas County, Ohio*, No. 3:13cv1335, 2015 WL 2384096, at *6 (N.D. Ohio 2015) (Helmick, D.J.).

One exception to the abeyance recommendation is that Day's state-law claim of medical negligence against Defendants DeLong and Day is subject to dismissal because he has conceded that these Defendants cannot be held liable for medical malpractice. *See* Doc. #36, *PageID* #s 213, 225.

Day has also conceded that Defendants DeLong and Wagner cannot be liable under § 1983 for the alleged unconstitutional policies in place at the Montgomery County Jail. *Id*. at 213.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Judgment on the Pleadings (Doc. #30) be GRANTED, in part, and Plaintiff's state-law claim for medical negligence and his § 1983 policy-based claim be dismissed;

2. Defendants' Motion for Judgment on the Pleadings (Doc. #30) be DENIED in remaining part.


November 30, 2017                    *s/Sharon L. Ovington*
                                     Sharon L. Ovington
                                     United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).