# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

Jeffery Day,

       *Plaintiff,*

v.

       **Case No. 3:16-cv-437**
       **Judge Thomas M. Rose**

Kim DeLong, *et al.*,

       *Defendants.*

---

**ENTRY AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT BY NAPHCARE INC. AND JACK SAUNDERS, ECF 89; GRANTING MOTION FOR SUMMARY JUDGMENT BY CITY OF TROTWOOD, OHIO, KIM DELONG AND OFFICER KEVIN WAGNER, ECF 92; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BY MONTGOMERY COUNTY BOARD OF COMMISSIONERS AND PHIL PLUMMER, ECF 93; DENYING MOTION FOR SUMMARY JUDGMENT BY JEFFREY DAY, ECF 91, DENYING MOTION TO STRIKE CERTAIN PORTIONS OF TESTIMONY OF PLAINTIFF'S EXPERT WITNESS JONATHAN PALEY, M.D., BY NAPHCARE INC. AND JACK SAUNDERS ECF 86; AND GRANTING MOTION TO AMEND / CORRECT DEPOSITION TRANSCRIPT BY NAPHCARE INC. AND JACK SAUNDERS ECF 87. SUMMARY JUDGMENT IS AWARDED TO CITY OF TROTWOOD, OHIO, KIM DELONG, OFFICER KEVIN WAGNER, AND PHIL PLUMMER. JEFFERY DAY, NAPHCARE INC. AND JACK SAUNDERS ARE TO PREPARE FOR TRIAL ON DAY'S CLAIMS FOR MEDICAL NEGLIGENCE. DAY, NAPHCARE INC., SAUNDERS AND MONTGOMERY COUNTY ARE TO PREPARE FOR TRIAL ON DAY'S CLAIM FOR DELIBERATE INDIFFERENCE.**

---

Pending before the Court are motions from all parties, primarily seeking summary judgment. They are: Motion for Summary Judgment by Defendant NaphCare Inc. and Defendant

Jack Saunders, ECF 89, Motion for Summary Judgment by Defendant City of Trotwood, Ohio, Defendant Kim DeLong, and Defendant Officer Kevin Wagner, ECF 92, Motion for Summary Judgment by Defendant Montgomery County Board of Commissioners and Defendant Phil Plummer, ECF 93, Motion for Summary Judgment by Plaintiff Jeffrey Day, ECF 91, Motion to Strike Certain Portions of Testimony of Plaintiff's Expert Witness Jonathan Paley, M.D., by Defendant NaphCare Inc., and Defendant Jack Saunders, ECF 86, and Motion to Amend/Correct Deposition Transcript by Defendant NaphCare Inc. and Defendant Jack Saunders. ECF 87.

**Background**

On November 26, 2015, Thanksgiving evening, Plaintiff Jeffrey Day was in a motor vehicle accident.   Day was a passenger in a car that was involved in a collision on Wolf Road in Trotwood at approximately 11:30 p.m. (Deposition of Jeffrey Day, ECF 70, PageID 437)   As a result of the collision, Day suffered a fractured right acetabulum, the part of his pelvis that forms the socket of his hip. (Deposition of Jonathan J. Paley, M.D., ECF 82, PageID 1598)   At the time of the collision, Day was intoxicated, and after the collision was in tremendous pain and shock as a result of the injury. (Depo. Day, ECF 70, PageID 437-38)

Defendant Sgt. Kim DeLong responded to the accident.   She claims in her police report that Day provided false information to her, which delayed her investigation of the collision. (Trial Transcript at 26-27).   DeLong charged Day with Obstructing Official Business.   After Day signed a waiver of medical treatment, (Deposition of Jameson Kordik, at 39-40), she placed him under arrest and in the back of a police cruiser. (Trial Transcript at 36-37)   Day was taken to the Montgomery County Jail by Defendant Officer Kevin Wagner where he was held until December 1, 2015. (Trial Transcript at 70)

Upon arriving at the Montgomery County Jail, Day was unable to walk from the cruiser into the booking area unassisted. (Depo. Day, ECF 70, PageID 450)   The video of this process shows Day unable to walk properly, unable to stand on his right leg, and in pain. (Video 22, at 4:10- 5:30; Video 1, at 0:00-2:35; Video 13, at 0:00-2:30; Video 25, at 0:25-2:05; Video 29, at 1:00- 2:15)   Even after someone brought a wheelchair for Day, he leaned to his left to avoid putting pressure on his right hip. (Video 27, at 0:00-0:12; Video 28, at 0:00-2:15.)

Defendant Jack Saunders, an EMT and an employee at NaphCare, Inc., was working that night performing initial medical screening/intake for inmates. (Affidavit of Jack Saunders, ¶ 4, attached hereto as Exhibit A.)   While the parties do not describe NaphCare's role at the jail, the Court presumes it continues to be true that

> NaphCare is a corporation that is organized under the laws of Alabama and licensed in the state of Ohio and several other states. Id. at ¶ 14, 15 . One of NaphCare's primary lines of business is the provision of medical care to the residents of correctional facilities throughout the country.   That is, instead of maintaining its own staff of doctors, nurses, and other health professionals, jails hire NaphCare as an independent contractor to undertake the day-to-day responsibilities of providing their inmates with medical care. The Montgomery County Jail has such an arrangement with NaphCare[.]

*Walters v. NaphCare, Inc.*, No. 3:09-CV-136, 2010 WL 1390383, at *1 (S.D. Ohio Mar. 31, 2010).   NaphCare had a policy not to send an inmate to the hospital except for "life threatening" injuries. (Depo. Saunders, ECF 79, PageID 1339)

Saunders performed his intake screening of Day at 5:03 a.m. (Saunders Affidavit, ¶ 7.) As an EMT, Saunders does not make medical diagnoses or provide specific medical treatment; he obtains the initial intake information for medical screening and may arrange for follow up with a care provider, if necessary. (Saunders Affidavit, ¶ 5.)   Saunders asked Day questions,

took his vital signs, which were stable, and completed a screening/intake assessment. (ECF 79-8, PageID 1436-51; ECF 79-9, PageID 1452; Saunders Affidavit, ¶¶ 6, 17.)   Day told Saunders about the pain in his leg. (Depo. Day, ECF 70, PageID 453)   Day told Saunders that he had been in a motor vehicle accident and that he felt like he had broken something in his leg. (Deposition of Jack Saunders, ECF79, PageID 3170; ECF 79-7, PageID 1435)   Saunders said that he would ask a nurse to examine Day, and listed it as a high priority request, but no nurse ever saw him. (Depo. Day, ECF 70, PageID 453; Depo. Saunders, ECF79, PageID 1354-55)[1]   When he was being put into the jail uniform, since he was unable to change clothes himself, he repeatedly told the jail staff that his leg felt like it was broken, and that he was in horrible pain. (Depo. Day, ECF 70, PageID 455)   He received no response to his pleas for help. (Depo. Day, ECF 70, PageID 457)

At the time, Saunders noted:

> [S]tated was in [a motor vehicle accident with a chief complaint]
> of right sided hip pain.   [S]tated unable to place[] weight on limb
> but walked in without assistance.   [W]as given wheelchair but
> now is favoring limb.   [S]tated shooting pain to toes but has range
> of motion and PMS (pulse, motor, sensory).   [N]urses made
> contact with inmate.   [A]lso claiming inner thigh pain "feels like I
> snapped my shit."

(ECF 79-8, PageID 1438.)   Because of Day's complaints, Saunders placed Day on the sick call list to be seen by a nurse practitioner or other care provider. (Saunders Affidavit, ¶ 12.) Saunders also marked Day as a priority for follow up. (ECF 79-7, PageID 1435.)   Saunders put Day on the advanced list to be seen as a priority because he knew that would bump Day to the

---

1 Defendants Jack Saunders, EMT and NaphCare, Inc. move the Court to grant the amendment of the deposition transcript of Jack Saunders to include an *errata* sheet. ECF 87.   This motion will be granted.

4

top of the screening so that whoever was coming in would see him in the next day or two in order to determine if he needed any further care, such as x-rays, medications, etc. (Saunders Affidavit, ¶ 13; ECF 79, PageID 1355.)   Saunders anticipated Day would be seen by a nurse practitioner or other care provider within a day or two or within 24 hours per the non-emergent health care policy at NaphCare. (Saunders Affidavit, ¶ 14; ECF 79, PageID 1395-96.) Saunders completed his intake screening at approximately 5:26 a.m.   He had no further involvement with Day as he was taken to housing. (Saunders Affidavit, ¶ 15.)

        As part of the screening process, Saunders educated Day how to access or request medical care. (Saunders Affidavit, ¶ 18; ECF 79-8, PageID 1451.)   Saunders educated Day on how to access care by completing a health care request form or medical "kite" if necessary. The next Day, after not receiving any treatment after being booked in, he stood in line where medical staff was handing out medication.   When his turn came, Day explained that he was not in line to receive medication, but to tell the medical staff that he needed medical care. (Depo. Day, ECF 70, PageID 457-458)   The medical staff member responded by saying that Day could be in the jail for up to seventy-two hours without jail personnel having to provide him with any medical treatment. (Depo. Day, ECF 70, PageID 458-459)   Day tried the same thing the next day.   He stood in the medication line and once again told the medical staff member that he needed medical care, and was in horrible pain.   The staff member responded that he could not give Day anything for his pain. (Depo. Day, ECF 70, PageID 459)   Eventually, a fellow inmate suggested that Day submit what is known as a "kite," written request for medical care. (Depo. Day, ECF 70, PageID 460)   Day never received any response to the written request, nor was it logged into the NaphCare system for addressing kites. (Depo. Day, ECF 70, PageID 460-462).

In discovery, Day produced a jail request form that was not a "kite," completed by Day on November 28, 2015. (ECF 77-3, PageID 1126.)

After five days of incarceration, Day was released. (Depo. Day, ECF 70, PageID 463) He went to Miami Valley Hospital, where he was treated for his broken hip. (Depo. Day, ECF 70, PageID 464) Day's condition required immediate surgery to correctly place the broken bone so that it would heal properly. (Depo. Paley, ECF 82, PageID 1549-1550) Because of the delay in treatment, Day suffered a loss of chance of recovering more completely from the fracture. (Depo. Paley, ECF 82, PageID 1550) In addition, Day suffered through five days in the Montgomery County Jail with a broken hip without so much as an aspirin to dull the pain. (Depo. Day, ECF 70, PageID 458) Day now uses a cane to walk, because of the pain from his hip. (Depo. Day, ECF 70, PageID 469)

On October 18, 2016, Day filed a complaint in this Court. ECF 1. On June 7, 2017, an amended complaint was filed. ECF 27. The claims in the Amended Complaint include: 1. medical negligence against Sgt. Kim DeLong, Officer Wagner, Sheriff Phil Plummer in his official capacity, Jack Saunders EMT and NaphCare; 2. Deprivation of Constitutional Rights, Deliberate Indifference to a Serious Medical Need pursuant to 42 U.S.C. § 1983, against Sgt. DeLong in her individually capacity, Officer Wagner in his individual capacity, Sheriff Plummer, in his official capacity, Saunders, NaphCare and John Does in their individual capacities, as well as official capacities; 3. Deprivation of Constitutional Rights, Unconstitutional Policy, Failure to Train, Supervise or Discipline pursuant to 42 U.S.C. § 1983 against Sheriff Plummer in his official capacity and Sgt. DeLong in her personal and official capacity; 4.

Malicious Prosecution or Abuse of Process by Sgt. DeLong in her individual capacity; 5. False arrest.

On January 10, 2018, the Court adopted Magistrate Judge Ovington's Report and Recommendation, ECF 47, that Defendants City of Trotwood, Ohio, Kim DeLong, Officer Wagner's Motion for Judgment on the Pleadings, ECF 30, be granted in part and Plaintiff's state-law claim for medical negligence and his § 1983 policy-based claim against these Defendants be dismissed, ECF 50, leaving Saunders and NaphCare as the only defendants on negligence.

## II.    Standard of Review

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. at 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. at 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

With regard to the role of video evidence in determining a summary judgment motion, the Sixth Circuit has held:

> Where, as here, there is a videotape capturing the events in question, the court must view those facts in the light depicted by the videotape. However, where the video does not tell the whole story in a material respect, or reasonable jurors could interpret the video evidence differently, summary judgment is not appropriate. Moreover, even if part of a party's testimony is blatantly contradicted by an audio or video recording, that does not permit the district court to discredit his entire version of the events. In other words, that a recording

> blatantly contradicts a party's exact version of the events, or certain
> parts of his version, is not alone fatal at summary judgment. A
> recording must blatantly contradict a party's entire version of the
> events in material respects to each claim.

*Hanson v. Madison Cty. Det. Ctr.*, 6th. Cir. Case No. 17-5209, 2018 U.S. App. LEXIS 13261, *13-14 (May 22, 2018) (internal citations omitted); quoting *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012); *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011).

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III. Analysis

The Court will consider the viability of Plaintiff's claims in the order they were pleaded in the amended complaint, resolving all motions along the way.

### First Claim: Medical Negligence

The Court having adopted the magistrate's report and recommendation, ECF 47, that the Motion for Judgment on the Pleadings by Defendants City of Trotwood, Ohio, Kim DeLong, and Officer Wagner, ECF 30, be granted, ECF 50, Plaintiff's medical malpractice claim persists only against Defendant Jack Saunders and NaphCare in their individual capacities and Sheriff Plummer in his official capacity.

As to Saunders and NaphCare, to establish a claim for medical malpractice under Ohio law, a plaintiff must show by a preponderance of the evidence:

> (1) the standard of care recognized by the medical community; (2) the failure on the part of the medical care provider to meet standard of care; (3) that the negligent act on the part of the Defendants proximately caused Day's injury; and (4) damages.

*Bruni v. Tatsumi*, 46 Ohio St.2d 131 (1976); see also *Roberts v. Ohio Permanente Med Group*, 76 Ohio St.3d 483 (1996). To establish these elements, a plaintiff must provide competent medical expert testimony. *Id. Price v. Cleveland Clinic Foundation*, 33 Ohio App. 2d 301 (1986).

While Saunders and NaphCare assert that Day has provided no competent medical expert testimony that Saunders or any other employee of NaphCare, Inc. was negligent or proximately caused injury, Saunders has this evidence from the testimony of Dr. Jonathan J. Paley.[2]

Dr. Paley testified that it is the standard of care for a nurse to order a CT scan, or at the very least an x-ray, for anyone who has been in an automobile accident. (Depo. Paley, ECF 82, PageID 1562) Dr. Paley stated that especially where the patient was exhibiting symptoms like hopping, limping, or needing a wheelchair, it is necessary to send the patient to the emergency room for evaluation. (Depo. Paley, ECF 82, PageID 1563) He testified that given all these factors—the accident, the complaints of pain, the inability to bear weight on his right leg, limping, and needing a wheelchair—it was a violation of the standard of care not to send Day to the emergency room for evaluation. (Depo. Paley, ECF 82, PageID 1563) Dr. Paley testified that this is true regardless whether the provider in question is a nurse or an EMT. (Depo. Paley, ECF 82, PageID 1563) Dr. Paley stated that if a nurse failed to refer a patient to the emergency

---

2 Defendant NaphCare Inc., and Defendant Jack Saunders move the Court to strike certain portions of testimony of Plaintiff's expert witness Jonathan Paley, M.D. ECF 86. Dr. Paley's testimony and his report comporting with Fed. R. Evid. 702, and appearing likely to assist a finder of fact, the motion will be denied.

room under these circumstances, that failure is a violation of the standard of care. (Depo. Paley, ECF 82, PageID 1564)

Defendants point out that Dr. Paley, an orthopedic surgeon, is not an EMT, nor is he a nurse. However, "[A]n expert is not limited to any class of persons acting professionally." *Gooding v. St. Francis Xavier Hosp.*, 253, 487 S.E.2d 596, 598 (S.C. 1997) (quoting *Botehlo v. Bycura*, 320 S.E.2d 59, 64 (S.C. App.1984)); see also, *McGee v. Bruce Hospital System*, 439 S.E.2d 257 (S.C. 1993) (although the physician was not a surgeon, he could testify as an expert on the standard of care in the placement of a catheter by a surgeon); *Howle v. PYA Monarch, Inc.*, 344 S.E.2d 157 (S.C. App. 1986) (a psychologist was qualified as an expert witness to testify as to diagnosis, prognosis, and causation of mental and emotional disturbance in a personal injury action); *Daniels v. Bernard*, 270 S.C. 51, 240 S.E.2d 518 (1978) (in a personal injury action, a chiropractor was competent to testify as a medical expert to the extent of his knowledge and experience); *Sandford v. Howard*, 161 Ga. App. 495, 288 S.E.2d 739 (1982) (an orthopedist was competent to testify against a podiatrist where the orthopedic and podiatric methods of treatment were the same and the witness had knowledge of the procedure used by the podiatrist); *Avret v. McCormick*, 246 Ga. 401, 271 S.E.2d 832 (1980) (a nurse was competent to testify in a medical malpractice action against a physician as to the standard of care in keeping sterile a needle used to draw blood).

Likewise, while Defendants assert Plaintiff has failed to establish his burden of proof on proximate causation, Dr. Paley testifies to this as well: "[T]he standard of care for this type of injury, typically mandates immediate surgery. At the very least, a patient with a hip fracture such as this should be placed into skeletal traction to maintain joint congruency while soft tissues

are allowed to return to a more stable state." ECF 82-2, PageID 1608. He continues, "more likely than not, he will require a total hip arthroplasty due to either post-traumatic osteoarthrosis or avascular necrosis of the femoral head, well-known complications of this type of injury, further complicated by the delay in treatment." *Id.* Therefore, a genuine issue of material fact exists as regards Day's medical malpractice claim against Saunders and NaphCare, and summary judgment will not be awarded on this claim.

As regards Sheriff Plummer, he is entitled to immunity pursuant to Ohio Rev. Code § 2744 as to Plaintiff's claim for medical negligence. Plaintiff's medical negligence claim against Sheriff Plummer in his official capacity is a claim against Montgomery County as a political subdivision. See *Chesher v. Neyer*, 477 F.3d 784, 796-97 (6th Cir. 2007). The County qualifies for the general grant of immunity under Ohio Rev. Code § 2744.02, as the operation of a county jail is a governmental function. See Ohio Rev. Code § 2744.02(A)(1) (immunity for political subdivision for act or omission in connection with governmental function); § 2744.01(C)(2)(h) (operation of jail is a governmental function). Therefore, summary judgment will be awarded to Sheriff Plummer on this claim.

**Second Claim: Deliberate Indifference to Serious Medical Need, Violating 42 U.S.C. § 1983**

Day brings this claim against Sgt. DeLong in her individually capacity, Officer Wagner in his individual capacity, Sheriff Plummer in his official capacity, Saunders, NaphCare and John Does in their individual capacities, as well as official capacities.[3] As will be discussed more

---

3 The individual John and Jane Doe defendants will be dismissed. Plaintiff has never sought to identify individual John Doe defendants in an amended complaint. The two-year statute of limitations for Plaintiff's § 1983 claim has passed. See *Smith v. City of Akron*, 476 Fed. App'x 69-70 (6th Cir.2012).

Also, as regards Plaintiff's decision to name Sheriff Plummer and the Montgomery County Commissioners as defendants in their official capacities only, an official capacity suit under § 1983 is a suit against the government

fully below, where the governmental entity itself is also a defendant, a claim against an official

or employee of the entity in their official capacity is superfluous or redundant. *Slocum v. City of*

*Cleveland Height*s, USDC Case No. 1:14-CV-00532, 2014 U.S. Dist. LEXIS 83700, *8 (June

19, 2014, N.D. Ohio).   Here, the Montgomery County Board of Commissioners is named, thus,

Montgomery County stands accused of deliberate indifference.

The parties agree that it is unclear whether constitutional claims for deliberate

indifference should be analyzed under the Fourth or Fourteenth Amendment.   As the parties lay

out alternative analyses, so will the Court.

To prevail on a cause of action under § 1983, a plaintiff must prove: (1) deprivation of a

right secured by the Constitution or laws of the United States and (2) caused by a person acting

under the color of state law. *Winkler v. Madison County*, 062618 FED 6, 17-6073; *Shadrick v.*

*Hopkins County*, 805 F.3d 724 (6th Cir. 2015) (quoting *Jones v. Muskegon County*, 625 F.3d

935, 941 (6th Cir. 2010)).   Private medical professionals who provide health care services to

inmates at a county jail qualify as a government official acting under the color of state law for

the purposes of § 1983. *Id*.; *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008).

"[A] pretrial detainee's right to medical treatment for a serious medical need has been

established since at least 1987." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir.

2005); citing *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir. 1992).   The same standard is

applied to a claim for denial of medical treatment brought by a pretrial detainee under the

Fourteenth Amendment as is applied to a claim brought by a prisoner under the Eighth

---

entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   As such, Plaintiff's claims under § 1983 are construed as
claims against Montgomery County. See *Allen v. Leis*, 154 F. Supp. 2d 1240, 1259 (S.D. Ohio 2001).

Amendment. *Brown v. Komidar*, 765 F.2d 144 (6th Cir. 1985). "[T]he due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

However, the Sixth Circuit had not yet decided whether the Fourth Amendment should be applied to a pretrial detainee's medical-based claim. *Esch v. County of Kent*, 699 F. App'x 509 (6th Cir. 2017). "We have never squarely decided whether the Fourth Amendment's objective reasonable standard can ever apply to a plaintiff's claims for inadequate medical treatment." *Esch* at 514; *Boone v. Spurgess*, 385 F.3d 923, 934 (6th Cir. 2004) (noting the uncertainty regarding whether the Fourth Amendment applies to inadequate medical care cases but declining to resolve the question). Id. at 514-515. The *Esch* court found it unnecessary to decide whether the Fourth or Fourteenth Amendment supplied the basis for plaintiff's claims because the claims failed under both deliberate indifference and objective reasonableness standards (finding no deliberate indifference or constitutional deprivation against a medical intake person and others for an inmate who died of a seizure while in jail custody).

**Fourth Amendment**

To support a denial of medical care claim under the Fourth Amendment, a plaintiff must prove conduct that was objectively unreasonable under the totality of circumstances without the benefit of 20/20 hindsight. (Magistrate's Report and Recommendations, ECF 47, PageID 208, citing *Esch v. County of Kent*, 699 F. App'x 509, 515 (6th Cir. 2017). *Esch* held that four factors inform the determination of whether an [official's] response to a plaintiff's medical needs was objectively reasonable: (1) whether the officer has notice of the detainee's medical needs;

(2) the seriousness of the medical need; (3) the scope of the requested treatment and (4) the police interests, including administrative, penological or other investigatory concerns. *Id*. at 515-516, citing *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007). A plaintiff must also show that the defendant's conduct caused the harm of which she complains. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with a third factor–the scope of the requested treatment. *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011). In performing this inquiry, the totality of the circumstances is reviewed – analyzing the facts from "the perspective of a reasonable official in the defendant's position, rather than with the 20/20 vision of hindsight". Id. at 515; *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001).

DeLong and Wagner attempted to provide Plaintiff with medical treatment. (DeLong Aff. ¶ 19; Wagner Aff. ¶ 8.) However, Plaintiff signed a waiver refusing medical treatment and DeLong and Wagner respected his right to do so. (Hilvers Aff. ¶ 6.) Thus, DeLong and Wagner cannot be held liable under the Fourth Amendment.

As previously discussed, Dr. Paley's testimony provides a basis for a reasonable juror to conclude that Saunders' conduct and intake screening evaluation were not objectively reasonable. While Day denied injury and refused medical treatment at the scene of the accident, he complained of pain at the jail. Day complained of pain and was favoring the limb. In addition, the inability to walk or "favoring the limb" was because of pain.

Generally, evidence of recent traumatic injury is sufficient to demonstrate a serious medical need. *Brown v. Hughes*, 894 F.2d 1533, 1538 n.4 (11th Cir.1990) (finding that a few hours' delay in receiving medical care for urgent needs such as broken bones may constitute

deliberate indifference); see also *Gray v. Dorning*, 202 F.3d 268 (6th Cir. 1999)(unpublished) ("A reasonable physician or lay person would have recognized the need for prompt treatment after Gray fell out of a top bunk and asserted that he had suffered a fracture and was in pain.").

A reasonable juror could conclude it is objectively unreasonable for someone charged with another's well-being to not send Day to the emergency room under the circumstances in the case at bar. See *Stark v. NaphCare, Inc*., 2012 U.S. Dist. LEXIS 131185, *17, 2012 WL 4056831 (S.D. Ohio Sept. 14, 2012) (noting that jail doctor owed duty to provide inmate with treatment); citing *Phillips v. Roane County Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008)).   A reasonable juror could conclude Saunders had notice of Day's medical needs; the seriousness of the medical need; and the scope of the requested treatment.   Given Day's pretrial confinement, a reasonable juror could conclude there is no overriding police interests, be they administrative, penological or other investigatory concerns.

Saunders noted in the medical records that Day was reporting a ten-out-of-ten pain level. (Depo. Saunders, ECF 79, PageID 1367)   Day told Saunders that he had been in a motor vehicle accident, and that he felt like he had broken something in his leg. (Depo. Saunders, ECF#79, PageID 3170; ECF 79-7, PageID 1435)   Thus, Saunders not only had sufficient information to draw the inference that Day suffered from a serious medical need, he actually did draw that inference. (Depo. Saunders, ECF 79, PageID 1370-1371)

Dr. Paley testified that it is the standard of care for a medical professional to order a CT scan, or at the very least an x-ray, for anyone who has been in an automobile accident. (Depo. Paley, ECF 82, PageID 1562)   Dr. Paley stated that especially where the patient was exhibiting symptoms like hopping, limping, or needing a wheelchair, it is necessary to send the patient to

the emergency room for evaluation. (Depo. Paley, ECF 82, PageID 1563)   He testified that

given all these factors—the accident, the complaints of pain, the inability to bear weight on his

right leg, limping, and needing a wheelchair—it was a violation of the standard of care not to

send Day to the emergency room for evaluation. (Depo. Paley, ECF 82, PageID 1563)   This is

true regardless whether the provider in question is a nurse or an EMT. (Depo. Paley, ECF 82,

PageID 1563)   Thus, Plaintiff could prevail under the Fourth Amendment.

**Fourteenth Amendment**

The Eighth Amendment's prohibition on cruel and unusual punishment generally

provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs.

However, when a claim is asserted on behalf of a pretrial detainee, the due process clause of the

Fourteenth Amendment is the proper starting point. *Winkler v. Madison Cty.*, 893 F.3d 877, 902-

03 (6th Cir. 2018).   There are two parts to the claim, "one objective and one subjective."   For

the objective component, the detainee must demonstrate the existence of a sufficiently serious

medical need. See *Farmer v. Brennan*, 511 U.S. 825 (1994); *Burgess v. Fischer*, 735 F.3d 462

(6th Cir. 2013) and *Spears v. Ruth*, 589 F.3d 249 (6th Cir. 2009).   A medical need is sufficiently

serious if it has been diagnosed by a physician that has mandated treatment or is so obvious that

even a layperson would recognize the need for medical treatment. *Blackmore v. Kalamazoo*

*County*, 390 F.3d 890 (6th Cir. 2004).

With the subjective component, the detainee must demonstrate that the defendant

possessed a sufficiently culpable state of mind in denying medical care. *Spears v. Ruth*, 589 F.3d

249 (6th Cir. 2009).   A defendant has a sufficiently culpable state of mind if he "knows of and

disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837

(1994). In order to establish deliberate indifference, plaintiff must prove the [official] (1) subjectively knew of a risk to the inmate's health; (2) drew the inference that a substantial risk of harm to the inmate existed and (3) consciously disregarded that risk. *Id.* A plaintiff need not show that the defendant acted with the very purpose of causing harm but must show something greater than negligence or malpractice, as the subjective requirement is designed to prevent the constitutionalization of medical malpractice claims. *Rouster v. County of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014).

In order to show deliberate indifference, a plaintiff must show more than negligence or misdiagnosis of an ailment, *i.e.*, when a prison doctor provides treatment, albeit carelessly or inefficaciously to a prisoner, he has not displayed a deliberate indifference to the prisoner's need but merely a degree of incompetence which does not rise to the level of a constitutional violation. *Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001). Even the failure to follow internal policies, without more, does not constitute deliberate difference. *Meier v. County of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010) (noting that an awareness of a policy and the failure to comply with it "is not a *per se* constitutional violation") and *Andujar v. Rodriguez*, 4806 F.3d 1199 (11th Cir. 2007) (noting the failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is, at most, a form of negligence), quoting *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000).

DeLong and Wagner attempted to provide Plaintiff with medical treatment, and Plaintiff signed a waiver refusing medical treatment. Thus, they cannot be held liable under the Fourteenth Amendment, either, and summary judgment will be awarded to them on Plaintiff's deliberate indifference claim.

Given the symptoms that Saunders observed, however, a reasonable juror could conclude that he consciously disregarded a substantial risk of harm to Day.

NaphCare asserts that it cannot be held liable under § 1983. (Motion for Summary Judgment, ECF 89, PageID 1649)   The answer to this question is a bit subtle:

> Although Naphcare is amenable to suit under § 1983, a private entity such as Naphcare cannot be held liable for the actions of its employees on a § 1983 claim pursuant to a theory of *respondeat superior*. See *Nauroth*, No. 1:07-539, 2009 WL 3063404, at *10 (citing *Hicks*, 992 F.2d at 1458; *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003)).   Rather, a private corporation acting under color of state law can be held liable under § 1983 only where an action of its employee taken pursuant to an official custom or policy caused the constitutional violation in question. *Id.* (citing *Thomas* [*v. Coble*], 55 F. App'x [748] at 749 [(6th Cir. 2003)]). The unlawful policy or custom must have been the moving force behind the constitutional violation. *Monell v. Dep 't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   Thus, Naphcare cannot be held liable for any deliberate indifference to plaintiff's serious medical needs by its employee unless the employee, by denying needed medical care to plaintiff, was acting pursuant to an official policy or custom of Naphcare and the policy or custom was the direct cause of the harm alleged.

*Buchanan v. Hamilton County Sheriff's Dep't*, Case No. 1:10-cv-503, 2012 U.S. Dist. LEXIS 182988, *15-16, 2012 WL 6761507 (S.D. Ohio Nov. 26, 2012).   According to Saunders, NaphCare had a policy that he was not to send an inmate to the hospital except for "life threatening" injuries. (Depo. Saunders, ECF 79, PageID 1339)   Because of this policy, instead of sending Day to the hospital, Saunders entered a request that Day be seen by either a nurse or Dr. Ellis, a request that was ignored by NaphCare's staff. (Depo. Day, ECF 70, PageID 453; Depo. Saunders, ECF 79, PageID 1354-55)   Thus, a reasonable juror could find that the policy was the direct cause of the harm to Day, that harm being the unconstitutional denial of medical

treatment. Therefore, NaphCare and Saunders will not be awarded summary judgment on Day's deliberate indifference claim.

Moreover, a county is liable for any constitutional deprivations caused by the policies or customs of a contracted medical provider. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985). See also *Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir. 1982) (where a governmental entity delegates the final authority to make decisions then those decisions necessarily represent official policy). Thus, Plaintiff's assertion of this claim against Sheriff Plummer, which in reality is a claim against Montgomery County, also survives summary judgment.

Thus, whether analyzed under the Fourth or Fourteenth Amendment, a genuine issue of material fact exists with regard to Plaintiff's claim for deliberate indifference against Defendant Jack Saunders and NaphCare in their individual capacities and against Montgomery County, and they are not entitled to summary judgment on this claim.

**Third Claim: Failure to Train, Supervise or Discipline in violation 42 U.S.C. § 1983**

Day asserts failure to train, supervise or discipline claims against Sheriff Plummer in his official capacity and Sgt. DeLong in her personal and official capacity. Defendants first attack the claims against them in their official capacities.

The Court initially notes that Magistrate Judge Ovington's Report and Recommendation, adopted by this Court, recognized that Day conceded that Defendants DeLong and Wagner cannot be liable under § 1983 for the alleged unconstitutional policies in place at the Montgomery County Jail. (ECF 47, PageID 311).

**Official Capacity Claims**

Claims under 42 U.S.C. § 1983 are, in all respects other than name, claims against the entity, not against individuals in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Official-capacity suits…'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991), quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Essex v. County of Livingston*, 518 Fed. App'x 351, 354 (6th Cir. 2013). Where the governmental entity itself is also a defendant, a claim against an official or employee of the entity in their official capacity is superfluous or redundant. *Slocum v. City of Cleveland Height*s, USDC Case No. 1:14-CV-00532, 2014 U.S. Dist. LEXIS 83700, *8 (June 19, 2014, N.D. Ohio).

Similarly, Plaintiff has no evidence to establish any claims against Defendant DeLong in any capacity for failure to train supervise or discipline. See *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012). Even if Plummer or DeLong had violated Plaintiff's constitutional rights, Day's supervisory liability claims would still fail, since mere "ratification" of conduct by failing to investigate the incident and failing to discipline for making an invalid arrest and using excessive force is insufficient to make supervisors liable for their subordinates' conduct. *Id.* A plaintiff must present evidence that supervisors "'did more than play a passive role in the alleged violation.... Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.'" *Id.* (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999)).

To show a custom or practice of inaction in the face of unlawful conduct, Plaintiff would have to present proof of a persistent pattern of unconstitutional conduct, and constructive notice of that pattern. *Winkler v. Madison Cty.*, 893 F.3d 877, 902-03 (6th Cir. 2018) (citing

*D'Ambrosio*, 747 F.3d at 387-88).   But Day discusses only Saunder's actions, and therefore cannot establish a custom of deliberate indifference to the serious healthcare needs. *See Gregory*, 444 F.3d at 763 ("[A] plaintiff 'cannot rely solely on a single instance' to prove the existence of an unconstitutional custom." (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005))).

Neither is there liability under § 1983 for failure to adequately train.   To succeed on a claim based on inadequate training, a plaintiff "must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Day has no proof to show any inadequate training or supervision if a jury might find deliberate indifference.   There are "two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise.   'One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction....   A second type of...deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 902-03 (6th Cir. 2018) (quoting *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006)); see also *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). Because Day does not provide evidence of any previous instances where detainees have received constitutionally inadequate healthcare, the second situation is not in play here, and Defendants' motions will be granted.

**Fourth Claim: Malicious Prosecution/Abuse of Process**

Plaintiff asserts this hyphenated claim against Sgt. DeLong in her individual capacity. The Court will analyze each in order.

To succeed on a malicious prosecution claim, [a p]laintiff must show that: "(1) a prosecution was initiated against him and that the defendants participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Cheolas v. City of Harper Woods*, 467 Fed. App'x 374, 378 (6th Cir. 2012). Such a claim fails, however, when either "there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Taylor v. Streicher*, 465 Fed. App'x 414, 421 (6th Cir. 2012).

Plaintiff cannot satisfy three of the four elements required to succeed on a claim for malicious prosecution. There is no evidence to demonstrate that DeLong participated in the decision to prosecute Plaintiff. Additionally, the arrest was based on probable cause and the criminal proceeding was not resolved in Plaintiff's favor for the purposes of a malicious prosecution claim.

In order "to be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Hunt v. Wayne County*, M.D. Tenn. No. 1-10-0035, 2012 WL 279482, *4 (Jan. 31, 2012). This is true even for officers who "urge prosecution, but who have no effect on the probable cause determination by the prosecutor." *Jorg v. City of Cincinnati*, 145 Fed. App'x 143, 149 (6th Cir. 2005). Consequently, a defendant "cannot be held liable for malicious prosecution when they

did not make the decision to prosecute the plaintiff." *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); see also *Kinkus v. Village of Yorkville, Ohio*, 289 Fed. App'x 86, 91 (6th Cir. 2008) (Police officer who completed police report and signed criminal complaint form could not be held liable because those documents were ultimately forwarded to the prosecutor who made the decision to prosecute).

Additionally, "a malicious prosecution claim cannot be maintained against an officer based upon the mere fact that an officer provided truthful information to the prosecutor." *McGuire v. Lewis*, S.D. No. 1:12-cv-986, 2014 WL 1276168, *7 (March 27, 2014). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Loza v. Mitchell*, 766 F.3d 466, 495 (6th Cir. 2014) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted)).

Here, Plaintiff alleges that DeLong "had criminal charges brought against Plaintiff," and "set in motion legal proceedings." (ECF 127, PageID 141.) However, Plaintiff has no evidence DeLong communicated with any prosecutor about the decision to bring charges against Plaintiff, or that she expressed any opinion to prosecutors about whether she felt criminal charges against Plaintiff were appropriate. (DeLong Aff. ¶ 21.)

Ohio law forbids any act that hampers or impedes a public official in the performance of the public official's lawful duties with purpose to prevent, obstruct, or delay any authorized act within the public official's official capacity. Ohio Rev. Code § 2921.31. Because DeLong had probable cause to arrest Plaintiff for violating Ohio Rev. Code § 2921.31, Plaintiff's arrest does not provide a basis for his claim of malicious prosecution. "Probable cause is generally defined

as a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Huffer v. Bogan*, 1:10-cv-312-HJW, 2011 WL 5037209, *11 (S.D. Ohio 2011). Further, "'the want of probable cause is the real gist of the [malicious prosecution] action.'" *Id.*, quoting *Harris v. United States*, 422 F.3d 322, 328 (6th Cir. 2005). "Probable cause exists where 'facts and circumstances within the officer's knowledge...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Mechler v. Hodges*, S.D. Ohio No. C-1-02-948, 2006 WL 2927253 *3 (October 11, 2006), quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The existence of probable cause should be determined by the totality of the circumstances, an analysis that includes a realistic assessment of the situation from a law enforcement officer's perspective. Id.

Pursuant to Ohio Rev. Code § 2921.31, it is unlawful for any individual to purposely impede, obstruct, or delay a public official's performance of official duties. The evidence in this matter establishes that, when considering the totality of the circumstances on November 26, 2015, DeLong reasonably believed that Plaintiff violated this statute. While DeLong and Wagner were attempting to investigate a serious car crash, Plaintiff repeatedly attempted to access one of the vehicles involved in the crash; gave DeLong false information regarding his whereabouts at the time of the collision; and required DeLong to speak to other witnesses to determine whether Plaintiff's account of what happened was accurate. (DeLong Aff. ¶ 17.) Plaintiff also attempted to mislead DeLong by lying to her and showing her unrelated information on his phone and calls that were made, as well as how he ended up at the scene of

the accident. (Id. at ¶¶ 11, 12.)   There was a delay in the investigation that was the result of misinformation that Plaintiff provided.   Thus, DeLong had probable cause to arrest Plaintiff.

A bench trial was held in Dayton Municipal Court on April 20, 2017, and Plaintiff was found guilty of obstructing official business. (See Montgomery Municipal Court Docket for Case No. 2016 CRB 01198 W5 ).   However, Plaintiff moved for a new trial and the motion was granted.   The original judge recused herself, and a visiting judge was assigned.   Ultimately, the matter was dismissed upon a determination that a new trial date would not comply with Plaintiff's speedy trial rights.

However, the mere fact that a case was dismissed against a defendant does not necessarily mean that it was "resolved in a defendant's favor" for the purposes of a claim for malicious prosecution.   "In addition to Ohio law, a number of federal cases also hold that a plaintiff must plead and prove in a claim for malicious prosecution under § 1983 that criminal proceedings were concluded in a manner indicative of a factual finding in favor of the accused." *N. Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311, *3 (6th Cir. 1999) (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998); *Washington v. Summerville*, 127 F.3d 552 (7th Cir. 1997)); see also *Ohnemus v. Thompson*, 594 Fed. App'x 864, 866 (6th Cir. 2014) (affirming dismissal of malicious prosecution claim by party whose criminal charge was dismissed upon payment of restitution).   "The termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Ohnemus* at 867, citing *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988).   "[I]n determining whether a dismissal is a termination in favor of the accused, the court is not to consider whether the plaintiff is actually

innocent of the charges, but rather, whether the dismissal of the proceedings established his innocence." *Ohnemus* at 868, citing Restatement (Second) of Torts § 658 cmt. c (1977).

Here, the dismissal of the criminal charges against Plaintiff was based on compliance with his speedy trial rights, which is irrelevant to the veracity of the charges against him. Because no aspect of the dismissal established that Plaintiff was innocent, the proceedings were not terminated in his favor, as required to state a claim for malicious prosecution. Therefore, Plaintiff cannot prevail on three of the four elements necessary to prevail on a claim of malicious prosecution against Sgt. DeLong in her individual capacity.

**Abuse of Process**

In order to prevail on a claim for abuse of process, a plaintiff must demonstrate: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted in order to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that damages resulted directly from the wrongful use of process. *Cox v. Oliver*, 66 N.E.3d 1101, 1103 (Ohio App. 2016). "'[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Broadnax v. Greene Credit Service*, 118 Ohio App.3d 881, 890 (Ohio App. 1997). Further, "'[i]n an abuse of process case, the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.'" *Id.*, citing *Robb v. Chagrin Lagoons Yacht Club, Inc*., 75 Ohio St. 3d 264, 271 (1996). "'Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.'" Id.

Here, there is no evidence that DeLong had any ulterior motives when she placed Plaintiff under arrest.   She had never met him prior to November 26, 2015, nor did she have any contact with Plaintiff after he was taken to Montgomery County Jail. (DeLong Aff. ¶ 22.) Further, there is no evidence that DeLong arrested Plaintiff in order to further some ulterior motive or purpose.   Thus, DeLong is entitled to judgment in her favor with respect to Plaintiff's claim for abuse of process.

Additionally, DeLong is entitled to immunity under Ohio Rev. Code § 2744 for Plaintiff's claims under state law for malicious prosecution, false arrest, and abuse of process. Under Ohio law, DeLong is presumed immune from any state claims raised by Plaintiff, unless that immunity is stripped by Ohio Rev. Code § 2744.03(A)(6). *Cook v. Cincinnati*, 103 Ohio App.3d 80, 658 N.E.2d 814, 820 (1st Dist. 1995).   Ohio Rev. Code § 2744.03(A)(6) provides employees of political subdivisions with immunity, unless their acts fall within one of the following exceptions: (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the employee's acts or omissions were conducted with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) liability is expressly imposed upon the employee by a section of the Revised Code.

For purposes of § 2744.03(A)(6)(b), "malicious purpose" is the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct. *Jones v. Norwood*, 1st Dist. No. C-120237, 2013-Ohio-350, ¶ 42.   "Bad faith" evinces a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." Id. "Wanton misconduct" is "the failure to exercise any care toward those to whom a duty of care is

owed in circumstances in which there is great probability that harm will result." *Anderson v.*

*Massillon*, 134 Ohio St.3d 380, 983 N.E.2d 266, 2012 WL 6198607, at paragraph three of the

syllabus.   Finally, "[r]eckless conduct is characterized by the conscious disregard of or

indifference to a known or obvious risk of harm to another which is unreasonable under the

circumstances and substantially greater than negligent conduct." Id. at paragraph four of the

syllabus, (adopting 2 Restatement of the Law 2d, Torts, § 500 (1965)).

Here, Plaintiff sets forth no evidence to demonstrate DeLong acted with malicious

purpose, in bad faith, or in a wanton or reckless manner.   The sole reason Plaintiff was arrested

was his obstruction of their investigation. (DeLong Aff. ¶ 15).   DeLong did not have any prior

contact with Plaintiff, nor is there any evidence to suggest that Plaintiff's arrest was based on a

"dishonest purpose."   Further, based on Plaintiff's behavior at the scene of the crash, DeLong

did not have any reason to believe that harm would result by taking Plaintiff to jail, or that there

was any risk of harm to Plaintiff at all, especially since Plaintiff specifically refused all offers of

medical treatment. (Hilvers Aff. ¶ 6).

Similarly, with respect to the City of Trotwood, [d]etermining whether a political

subdivision is immune from liability...involves a three-tiered analysis." *Lambert v. Clancy*, 125

Ohio St.3d 231, 927 N.E.2d 585, 2010-Ohio-1483, at ¶ 8.   "The starting point is the general rule

that political subdivisions are immune from tort liability[.]" *Shalkhauser v. Medina*, 148 Ohio

App.3d 41, 772 N.E.2d 129, 2002-Ohio-222, at ¶ 14.   Under § 2744.02(A)(1), "a political

subdivision is not liable in damages in a civil action for injury, death, or loss to person or

property allegedly caused by any act or omission of the political subdivision...in connection with

a governmental or proprietary function."   At the second tier, this comprehensive immunity can

only be abrogated pursuant to one of the five exceptions set forth at Ohio Rev. Code § 2744.02(B). *Shalkhauser*, at ¶ 16. "Finally, immunity lost to one of the Ohio Rev. Code § 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability set forth in Ohio Rev. Code § 2744.03." Id., see Ohio Rev. Code § 2744.03(A).

The City of Trotwood is a political subdivision and the provision of police services is a governmental function. Ohio Rev. Code 2744.01(B)(2)(a). Further, none of the exceptions to immunity set forth in Ohio Rev. Code § 2744.02(A) are applicable to the facts in this case. Even if DeLong acted negligently, the provision or non-provision of police services is specifically designated a governmental function under Ohio Rev. Code § 2744.01(C)(2)(a). As such, the City of Trotwood is immune from any state law claims.

**Fifth Claim[4]: False Arrest**

Plaintiff asserts this claim apparently against all Defendants, as it is asserted, "jointly and severally, forcibly and without probable cause, falsely arrested the Plaintiff initially and for a period of five (5) days thereafter, restraining Plaintiff of his liberty." Plaintiff does not specify whether he brings his claim for false arrest under federal law or state law. In a false arrest claim brought under 42 U.S.C. § 1983, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Vill. of Timberlake*, Ohio, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted). False arrest is not a continuing tort, thus, any Defendants who did not arrest Plaintiff, cannot be held liable for false arrest. See *McCune v. City of Grand Rapids*, 842

_____

4 The Amended Complaint incorrectly lists this as the "Sixth Cause of Action."

F.2d 903, 905-06 (6th Cir. 1988) (arrestee's cause of action accrued on the date of arrest; wrongful arrest and wrongful incarceration do not constitute a continuing tort).

Under federal law, an officer has probable cause if there is a fair probability that the suspect has either committed or intends to commit a crime." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). "[T]he making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of Ohio Rev. Code §§ 2921.13(A)(3) and 2921.31(A)." *State v. Lazzaro*, 76 Ohio St.3d 261, 667 N.E.2d 384 (1996). Plaintiff falsely stated multiple times to Sgt. DeLong that he was not a passenger in the vehicle in which he and Trigg were riding, and Plaintiff's statements did in fact impede and prolong Sgt. DeLong's investigation. See Day Crim. Trial Tr. (Ex. C) at 22:2-27:17. As such, Sgt. DeLong and Officer Wagner had probable cause to arrest Plaintiff.

Plaintiff's false arrest claim under state law also fails. "Under Ohio law, the tort of false arrest is essentially the same as false imprisonment." *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960) (citation omitted). "A claim for false arrest is indistinguishable from a claim for false imprisonment in its essential elements-each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification." *Watenza v. Dayton*, No. 21984, 2008 WL 501479, ¶ 48 (Ohio App. 2008), citing *Evans v. Smith*, 646 N.E.2d 217 (Ohio App. 1994) (citing *Feliciano v. Kreiger*, 362 N.E.2d 646 (Ohio 1977)). "Thus, 'to succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures.'" *Id*., citing *Krantz v.*

*City of Toledo Police Dept.*, 365 F .Supp. 2d 832, 837 (N.D. Ohio 2005) (citing *McFinley v. Bethesda Oak Hosp.*, 607 N.E.2d 936 (Ohio App. 1992)).

Here, Plaintiff was detained lawfully, and his detention was accomplished pursuant to accepted legal procedures.   Moreover, DeLong and Wagner had probable cause to arrest Plaintiff for obstruction of official business.   Accordingly, Plaintiff's claim for false arrest fails.

**Qualified Immunity**

Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, -- U.S. ---, 137 S. Ct. 548, 551, citing *Mullenix v. Luna*, 577 U.S., at —— – ——, 136 S. Ct. 305, 308 (2015).   Here, even if Plaintiff had sufficiently pled a federal constitutional violation, Defendants DeLong and Wagner are entitled to qualified immunity because they are not alleged to have violated clearly established constitutional rights of which a reasonable officer would have known.

While the Supreme Court's case law "'do[es] not require a case directly on point'" for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id., at ——, 136 S. Ct., at 308.   A plaintiff must identify a case with a similar fact pattern that would have given "fair and clear warning to officers" about what the law requires. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 993 (6th Cir. 2017), cert. denied, 138 S. Ct. 738, (2018) (citing *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quotation omitted).   In other words, immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Ibid. "[C]learly established law" should not be defined "at a high level of generality." *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074 (2011).   The clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).   Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id., at 639, 107 S. Ct. 3034.

Here, DeLong and Wagner attempted to provide Plaintiff with medical treatment, if necessary. (DeLong Aff. ¶ 19; Wagner Aff. ¶ 8.)   However, Plaintiff signed a waiver refusing medical treatment and DeLong and Wagner respected his right to do so. (Hilvers Aff. ¶ 6.) Moreover, Plaintiff was able to walk throughout the crash scene and gave multiple statements to DeLong immediately after the crash. (DeLong Aff. ¶¶ 10-13; Wagner Aff. ¶ 6.)   Based upon this evidence, neither DeLong nor Wagner were plainly incompetent when they took Plaintiff into custody for obstructing their investigation of a car accident.   Therefore, DeLong and Wagner are entitled to qualified immunity.

As under federal law, an arrest based on probable cause defeats both a false arrest or a false imprisonment claim under Ohio law. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 315 (6th Cir. 2005).   Because Plaintiff's arrest was based on probable cause, Plaintiff's false arrest claim also fails under Ohio law.

Further, Defendants are entitled to political subdivision immunity under Ohio Rev. Code § 2744 against Plaintiff's false arrest claims.   Because Plaintiff's claims are against Sheriff Plummer and the Board of County Commissioners in their official capacities, they are claims against the County. See *Chesher v. Neyer*, 477 F.3d 784, 796-97 (6th Cir. 2007).   A county is entitled to political subdivision immunity against claims of false arrest. See *Frazier v. Clinton*

*Cty. Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008-Ohio-6064, ¶ 33 (county sheriff's office was entitled to immunity against false arrest and false imprisonment claims under Ohio Rev. Code § 2744.01, because provision of police services and enforcement of the laws are governmental functions, and none of the exceptions under Ohio Rev. Code § 2744.02(B) applied).

**Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment on his claims for violations of constitutional rights under 42 U.S.C. § 1983, for medical malpractice, for malicious prosecution, or for false arrest, asserting that Day is entitled to judgment on these claims as a matter of law. ECF 91. The Court having determined summary judgment is appropriate against Plaintiff on all of these claims except deliberate indifference, upon which there is a genuine issue of material fact, Plaintiff's motion, ECF 91, will be denied.

**Conclusion**

Because justice so requires, Defendants' Jack Saunders, EMT and NaphCare, Inc. Motion to Grant the Amendment of the Deposition Transcript of Jack Saunders to Include an *Errata* Sheet, ECF 87, is **GRANTED**.

Because Dr. Paley's testimony comports with Fed. R. Evid. 702, and is likely to assist a finder of fact Defendant NaphCare Inc., and Defendant Jack Saunders's Motion to Strike Certain Portions of Testimony of Plaintiff's Expert Witness Jonathan Paley, M.D. ECF 86, is **DENIED**.

Because Day has evidence that could cause a reasonable juror to conclude that Defendant Jack Saunders and NaphCare violated a standard of care recognized by the medical community and that the failure to meet that standard of care proximately caused injury to Day,

Day and NaphCare's Motion for Summary Judgment, ECF 89, is **DENIED**, on Day's claim for Medical Negligence.

Because whether analyzed under the Fourth or Fourteenth Amendment, a genuine issue of material fact exists with regard to Plaintiff's claim for deliberate indifference against Defendant Jack Saunders he is not entitled to summary judgment on this claim.   Saunders could have arranged for follow up with a care provider and a reasonable juror could find that he did not sufficiently do so.   Moreover, a reasonable juror could conclude that NaphCare had a policy not to send an inmate to the hospital except for "life threatening" injuries.   Thus, Day and NaphCare's Motion for Summary Judgment, ECF 89, is **DENIED**, on Day's claim for deliberate indifference in violation of 42 U.S.C. § 1983.

Because Day may be able to establish that NaphCare Inc. may have had a policy that could constitute deliberate indifference to the serious healthcare needs of detainees at the jail and that the County could be liable for a constitutional deprivation caused by the policy, the Motion for Summary Judgment by Defendant Montgomery County Board of Commissioners and Defendant Phil Plummer, ECF 93, is **DENIED** with regard to this § 1983 claim, but **GRANTED** in other respects.   Motion for Summary Judgment by Plaintiff Jeffrey Day, ECF 91, is **DENIED**.

Because there is no evidence to demonstrate that DeLong participated in the decision to prosecute Plaintiff, and because the arrest was based on probable cause and the criminal proceeding was not resolved in Plaintiff's favor for the purposes of a malicious prosecution claim, summary judgment is **GRANTED** in favor of Defendants on Day's malicious prosecution claim. Because there is no evidence that DeLong had any ulterior motives when she placed Plaintiff under

arrest, and because there is no evidence that DeLong arrested Plaintiff in order to further some ulterior motive or purpose, DeLong is **GRANTED** summary judgment in her favor with respect to Plaintiff's claim for abuse of process. Because DeLong and Wagner had probable cause to arrest Plaintiff for obstruction of official business. DeLong and Wagner are **GRANTED** summary judgment on Day's claim for false arrest. Moreover, because the Court has found that DeLong and Wagner are entitled to qualified immunity and the City of Trotwood is immune from any state law claims, Motion for Summary Judgment by Defendant City of Trotwood, Ohio, Defendant Kim DeLong, and Defendant Officer Kevin Wagner, ECF 92, is **GRANTED**.

The individual John and Jane Doe defendants are **DISMISSED**.

Jeffery Day, NaphCare Inc. and Jack Saunders are to prepare for trial on Day's claims for medical negligence. Day, NaphCare Inc., Saunders and Montgomery County are to prepare for trial on Day's claim for deliberate indifference.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, January 9, 2019.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE