**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| **JEFFREY DAY** ) | Case No. 3:16-cv-00437 |
| ) | |
| ) | **Judge Thomas M. Rose** |
| **Plaintiff,** ) | **Magistrate Judge Ovington** |
| ) | |
| **vs.** ) | |
| ) | **PLAINTIFF'S RESPONSE IN** |
| **SGT KIM DELONG, et al.,** ) | **OPPOSITION TO THE RENEWED** |
| ) | **MOTION IN LIMINE TO EXCLUDE** |
| **Defendants.** ) | **PX 44; MOTION IN ALTERNATIVE** |
| ) | **TO COMPEL DEPOSITION** |
| | **TESTIMONY FILED BY** |
| | **MONTGOMERY COUNTY** |
| | **DEFENDANTS** |

**MEMORANDUM**

I. **INTRODUCTION**

Defendant Montgomery County Sheriff Robert Streck and the Montgomery County Board of Commissioners have, once again, asked the Court to exclude Plaintiff's exhibit PX 44: two photos showing a sign posted on a bulletin board inside the Montgomery County Jail's medic's office that reads "If you can talk then you obviously can f***ing breathe." The Montgomery County Defendants have titled this motion as a "renewed" motion rather than a motion for reconsideration, although the Court already ruled in Entry and Order of February 12, 2019 that the PX 44 photos "are **ADMISSIBLE**." (Doc # 135, PageID# 3471).

The Montgomery County Defendants again seek to exclude the two photographs. They raise, in part, the same arguments that they raised in their prior motion in limine, which the Court rejected. (Doc # 147, PageID#3638) ("The County Defendants have already noted in their prior motion in limine that emails visible in PX 44 were dated long after Mr. Day was in Jail.") These

1

arguments were already rejected by this Court. The fact that a sign like this was posted in the Medic's Office is highly probative of the attitude of the jail staff toward inmate medical complaints. It indicates that the first reaction of the staff is to disbelieve and ignore medical complaints from inmates. This is certainly relevant to the fact that Mr. Day's multiple requests for medical care were ignored for five days. The County claims that these photos are irrelevant because they appear to show the state of the bulletin board sometime after Mr. Day was released from the Montgomery County Jail. This argument ignores the fact that Plaintiff has alleged a pattern and practice of deliberate indifference to inmates' serious medical needs. The fact that this pattern and practice endured for years after Mr. Day was released is both probative and admissible, as this Court already held.

The new arguments raised by Montgomery County Defendants arise from the recent deposition of a third-party witness, former jail medic, Jennifer Angerer, whom Defendants believe was the photographer, and who raised her Fifth Amendment privilege against self-incrimination during her deposition. Without citing to any authority supporting its position, Defendants argue that Ms. Angerer's assertion of her Fifth Amendment rights somehow affects the admissibility of PX 44. Defendants make this argument despite the fact that they acknowledge, "there is no connection whatsoever between" Ms. Angerer and Jeffrey Day, and Ms. Angerer "has never even met Mr. Day." (Doc.# 148, PageID# 3639.) Defendants make no clear argument at all how Ms. Angerer's refusal to testify bears on any relevant issue in this case. They cite no case authority even hinting that a third-party witness's assertion of a privilege should somehow affect the Plaintiff's ability to submit evidence which the Court has already found admissible without her testimony.

The focus of the County's argument is almost wholly on whether Ms. Angerer had a proper ground to assert her Fifth Amendment privilege. The County argues that, because Ms. Angerer does not appear to be currently the subject of a criminal investigation, she has no reasonable basis

2

to fear self-incrimination. That is, of course, not the applicable standard. The applicable standard is whether a witness has a reasonable cause to fear a possible prosecution. *In re: Folding Carton Antitrust Litig.,* 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution does not depend upon the Likelihood, but upon the Possibility of prosecution.") In that regard, it is relevant that Montgomery County has repeatedly asserted in pleadings before this Court, where its counsel were Montgomery County Prosecutors, that it is "illegal" to copy documents in the Montgomery County Jail and that possession of such copies constitutes possession of "stolen property." Regardless of the validity of that position—which is, indeed, highly questionable—it states the position of the County and its prosecutors. Ms. Angerer's fear of self-incrimination, in light of the County's professed position was—and is—wholly reasonable.

**II.     ARGUMENT**

        **A.  Jennifer Angerer had the right to assert a privilege against self-incrimination.**

The Montgomery County Defendants assert that: "Dwight Brannon lacks valid grounds to instruct Ms. Angerer to assert the privilege against self-incrimination, as Ms. Angerer is not and has never been under criminal investigation." (Doc. #148, PageID #3629.) Defendants argue that Ms. Angerer was investigated for a violation of the Montgomery County Sheriff's Office's jail policy, but she was not subject to a criminal investigation. Thus, the Montgomery County Defendants appear to be arguing that a third-party witness may only assert her fifth-amendment privilege against self-incrimination if she is the subject of a criminal investigation.

Review of applicable case authorities establishes that Defendants' position is incorrect. "The absence … of a pending or likely prosecution does not rule out a finding that the privilege asserted is well-founded." *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1228 (S.D.N.Y. 1980). The applicable standard is whether a witness has a reasonable cause to fear a

3

possible prosecution. *W.J. Usery v. Brandel,* 87 F.R.D. 670, 682 (W.D. Mich. 1980). In the instant case, Ms. Angerer had just such a reasonable cause. This is so because the Montgomery County Defendants and their representatives in the Montgomery County Prosecutor's office have repeatedly and forcefully asserted that copying or dissemination of documents from the Sheriff's office constitutes a crime, and that is precisely what the Montgomery County Defendants are alleging Ms. Angerer has done. According to positions repeatedly asserted by Montgomery County and the Prosecutor's Office, copying a sheriff's document and giving that copy to another person both constitute "crimes."

The Fifth Amendment allows a witness in a civil matter to refuse to answer questions when to do so would involve substantial risk of self-incrimination. *United States v. U.S. Currency*, 626 F.2d 11, 14 (6th Cir. 1980). Any refusal to answer, however, must be a valid assertion of rights under the Fifth Amendment and it is for the Court to decide whether a witness's silence is justified. *Morganroth v. Donovan,* 718 F.2d 161, 167 (6th Cir. 1983). A witness's mere declaration that he might incriminate himself is not enough to justify a failure to answer, *Hoffman v. United States,* 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951), as it remains the role of the court to consider "the implications of the question, in the setting in which it is asked", *id.* at 486-87. The witness must provide "an explanation of why [a question] cannot be answered." *Id*.

A witness's refusal to answer may be upheld where the witness has "reasonable cause to apprehend a real danger of incrimination.*" Id.* Critically, this danger must be real, and not a "fanciful possibility of incrimination." *U.S. Currency*, 626 F.2d at 14; *Morganroth*, 718 F.2d at 167. The court should not weigh the ***probability*** of prosecution in considering the assertion of the privilege though, but should instead examine the ***possibility*** of prosecution. *W.J. Usery*, 87 F.R.D. at 683 ("[A]s long as prosecution is possible . . . [the witness] has such reasonable cause [to assert

4

the Fifth Amendment.]"); see also *In re: Folding Carton Antitrust Litig.,* 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution does not depend upon the Likelihood, but upon the Possibility of prosecution.") (internal quotation omitted); Indeed, the probability of prosecution is typically irrelevant in examining the privilege, unless a legal bar, such as the expiration of the statute of limitations or a grant of immunity, would prevent any criminal prosecution. *W.J. Usery,* 87 F.R.D. at 683; *In Re: Folding Carton*, 609 F.2d at 872.

In the case of *Guglielmo v. Montgomery County, Ohio*, S.D. Ohio No. 3:17cv6, throughout the course of that litigation, the Defendant, Montgomery County, asserted repeatedly, through its counsel, while represented by the Montgomery County Prosecutor's office, that copying documents and giving those copies to others constitutes theft, receipt of stolen property, and criminal conspiracy. See Doc. #62, PageID #625 ("[Former Deputy Sheriff Eric Bank] states facts that could be construed to constitute a crime.") ("Mr. Banks testified that he and Mr. Creech illegally copied surveillance video from the Montgomery County Jail, then met with Mr. Brannon and gave this stolen property to Mr. Brannon."); *id*. at 628 ("regarding Mr. Bank's [sic] testimony that he took property from the … Jail in 2016 and transmitted this stolen property to Mr. Brannon."); Doc. #83, PageID #1613 ("he testified that he engaged in a potential crime with Attorney Brannon.") ("a witness testified during his deposition in March of 2018 that he and another individual illegally copied surveillance video from the Montgomery County Jail, then met with Attorney Douglas Brannon and gave this stolen property to Attorney Brannon."); *id*. at 1613, n.2 ("Defendants had not yet been informed by Gerhardstein and Branch that they in fact possessed the alleged stolen property that Mr. Banks testified to stealing and transmitting to Attorney Douglass [sic] Brannon."); *id*. at 1614 ("Per Mr. Banks testimony, his non-privileged relationship with Attorney Douglas Brannon deals with the alleged theft of property from the Montgomery

5

County Jail in 2016 and possibly its subsequent transmittal to The Washington Post among other entities.") ("if one witness is claiming to have gone to Attorney Brannon for assistance in the commission of a crime …."); Doc. #88, PageID #1638 ("Per Mr. Banks' testimony, he and Mr. Creech stole government property."); *id.* at 1639 ("If Mr. Banks' testimony on this issue is true and accurate, then he and Mr. Creech committed a crime in the stealing of the videotape from Montgomery County.") ("If Mr. Banks' testimony on this issue is true and accurate, then he and Mr. Creech committed a crime in the stealing of the videotape from Montgomery County and in it [sic] subsequent transmission or transmissions to other person and entities."); *id.* at 1639, n.1 ("there is also evidence now that the stolen video was transmitted to The Washington Post with an advertising message about The Brannon Law Firm."); *id.* at 1640 ("Eric Banks testified that he and Mr. Creech took the stolen property and gave it to Attorney Brannon.") ("Again, Mr. Banks testified that he and Mr. Creech stole the video tape and then gave it to Attorney Doug Brannon.") ("the taking of this video and any subsequent transmissions of it would constitute crimes under Ohio law per Mr. Banks' testimony.") ("Eric Banks testified that he and Mr. Creech took the video from their employer and then transmitted it to Attorney Douglas Brannon."); *id.* at 1641 ("Based upon and according to the testimony of Eric Banks, he engaged in a crime by stealing property from Montgomery County and then transmitted the stolen property to Attorney Douglas Brannon with Ransley Creech. These actions were in violation of criminal law ….").

  In each of these instances, although counsel for the defendants at that time asserted that the witness, Mr. Banks, had testified that he had "committed crimes" or "engaged in a conspiracy," this is a "gross mischaracterization," as noted by Magistrate Judge Ovington in her decision of June 1, 2018 (Doc #96, PAGEID #1690) ("Defendants' summary is a gross mischaracterization of Mr. Banks' testimony.") Mr. Banks testified only that he made a copy of the video. The

characterization of that conduct as a prosecutable crime was wholly attributable to Montgomery County through its attorneys, including the prosecutors, who filed memoranda in this Court very directly asserting that position. The County's position, moreover, was not just posturing. It acted. A complaint was made against Mr. Guglielmo's counsel based on the theory that such copies of MCSO documents constituted receipt of stolen property.

The question then posed is: does a person who worked in the Montgomery County Jail have "reasonable cause to apprehend" that she might be prosecuted for copying documents and then disseminating documents, where the County prosecutors have repeatedly, in legal filings, asserted that such conduct constitutes, amongst other things, theft, misuse of stolen property, and criminal conspiracy. Again, it is not necessary that Ms. Angerer fear actual conviction for these alleged crimes. She need only fear a genuine possibility of criminal prosecution. To do that, she need only take the Defendants and their counsel at their word.

**B. Jennifer Angerer's assertion of her privilege against self-incrimination has no bearing on the admissibility of PX 44.**

As an initial matter, it must be noted that the Montgomery County Defendants have cited no case authority whatsoever supporting their position that, somehow, the assertion of Fifth-Amendment rights by a third-party witness in a civil case affects the admissibility of an exhibit submitted by Plaintiff. The gist of Defendants' argument appears to be that PX 44 should be excluded as a discovery sanction, preventing the Plaintiffs from using evidence already deemed admissible by the Court because of a third-party defendant's assertion of her constitutional rights. It is not unsurprising that Defendants have cited no such authority in support of that position because the argument for sanctions under such circumstances is so inherently illogical.

In any event, as noted above, Ms. Angerer's fear that she could be prosecuted was wholly reasonable in light of the Defendants' repeated assertions that similar conduct constituted a

7

"violation of criminal law" and that the Defendants' counsel is tasked with enforcing criminal law in Montgomery County. Although the logic of Defendants' argument is not clear, it does appear that if Ms. Angerer's position with respect to her right against self-incrimination was justified—as it was—the Defendants' motion to exclude and motion to compel must be denied. Defendants have alleged no other basis on which to exclude the document other than those upon which this Court has already ruled in favor of admissibility.

To the extent that Defendants are suggesting that Ms. Angerer's testimony is necessary to authenticate the document, that suggestion cannot withstand scrutiny. The ordinary rule of federal evidence is that photographs are authenticated by "evidence sufficient to support a finding that the [photograph] is what the proponent claims it is," Fed. R. Evid. 901(a). See *United States v. Thomas*, 701 F. App'x 414, 419 (6th Cir. 2017). A photograph may be authenticated through the testimony of a witness with knowledge who testifies that the photograph is an accurate representation of the scene depicted. See *Shahid v. City of Detroit,* 889 F.2d 1543, 1546 (6th Cir. 1989).

The Montgomery County Defendants have submitted, as an attachment to their motion for reconsideration, the declaration of Major Matthew Haines of the Montgomery County Sheriff's office, showing that the Sheriff's office conducted an investigation of the photographs and that they are authentic representations of the bulletin board in question. Major Haines' statement, which must be treated as a statement of a party opponent, admissible as a non-hearsay statement, Fed.R.Evid. 801(d)(2), establishes that the sign in question was, in fact, posted to the bulletin board. It was not posted by Jennifer Angerer, but by a different Naphcare employee. (Doc. # 148-1, PageID 3643, ¶6a.) The photographs accurately show how the bulletin board looked between October 9, 2018 and October 19, 2018. Indeed, the scene that the photographs represent is exactly

the same as that depicted in Exhibits A-3, A-4, and A-5. (Id., PageID 3648-50.)[1] At this point, forcing Ms. Angerer to testify at this point is wholly superfluous, and is wholly irrelevant to any issue in the case

More than this, it is troubling evidence of a pattern in which the Montgomery County Sherriff's office disciplines and then uses civil subpoenas to harass potential whistleblowers who may have revealed evidence of bad conduct at the Montgomery County Jail to outsiders. Because Defendants acknowledge that Ms. Angerer has no knowledge of, or connection to, the treatment of Jeffrey Day, the Defendants' attempts to force her to testify can only be explained as arising from an ulterior purpose in investigating—or punishing—the "leak" of the photograph. Similarly, in the *Guglielmo* case, the County sought to force the deposition of former Sergeant Ransley Creech, whom they had accused of "stealing" by making a copy of the surveillance video showing the pepper spraying of Amber Swink, and then engaging in a criminal conspiracy by distributing copies of that video to counsel. Plaintiff argued that the Defendants' motive in forcing the deposition was obviously for a different purpose than investigating the facts of the case, since Mr. Creech had no relevant information regarding the use of force against the Plaintiff. Judge Ovington agreed. She wrote:

> It is not entirely clear what Defendants' motive is behind deposing Mr. Creech. It appears that they wish to use discovery in the present case to aid their own investigation into the release of Swink video. This is inappropriate, a waste of this Court's time, and contrary to legal professionalism. Accordingly, Plaintiff's Motion for Protective Order barring the deposition of Ransley Creech is granted.

Case: 3:17-cv-00006; Doc. #96, PageID #1685. The same logic applies in the case at bar. The Defendants do not genuinely dispute that the photographs represented in Plaintiffs Exhibit PX 44 are "accurate representations of the scene depicted," which is all that is necessary to authenticate

---

[1] Major Haines' declaration identifies these as Exhibits B-3 through B-5, although they are labeled differently. This appears to be a typographical error.

them under Fed. R. Evid. 901(a).  The investigation represented in Major Haines' declaration states as much.  As noted above, the scene depicted by the photographs is identical to the scene depicted in the exhibits attached to Major Haines' declaration and authenticated by him in his declaration.

Even if Major Haines had not submitted his declaration, even if he had not authenticated photos showing the exact same billboard at the exact same time, Plaintiffs' Exhibit PX 44 could be authenticated by any person or every person who saw the bulletin board while the sign was posted to it and remembered it.  Since the sign was up as recently as October of 2018, approximately six months ago, no person would be required to tax their memory overmuch to do so.

The Montgomery County Defendants list six supposed areas that the Defendants wanted to question Ms. Angerer about, but were unable to because of her Fifth-Amendment refusal:  (1) her knowledge of the sign, (2) the termination of her employment, (3) what photographs that she takes using her cell phone; (4) whether Ms. Angerer ever used her cell phone while on duty (5) whether Ms. Angerer had ever seen PX 44 and (5) whether Ms. Angerer took the photographs identified as PX 44.  (Doc.#148, PageID #3632.)  It is not clear what relevance any of these areas of inquiry have with respect to any issue before the Court in the case at bar.  In any event, most—if not all—of these areas of inquiry appear to have been answered by the Defendants' own investigation.  Again, Jennifer Angerer had no connection at all to the events of this case.  Her only connection at all; to anything in this case, according to the Defendants' investigation, is that she appears to have photographed the sign in PX 44, and was terminated as a result.  The inescapable conclusion is that the focus of all of these inquiries is a continuation into the investigation of how these photographs may have been leaked.  To paraphrase Judge Ovington's decision in *Guglielmo*, it appears that the Defendants "wish to use discovery in the present case to

10

aid their own investigation into the release of [photographs]." As in that case, conducting such an investigation through abuse of civil discovery in this case "is inappropriate, a waste of this Court's time, and contrary to legal professionalism." Certainly, her assertion of her right against incriminating herself and subjecting herself to possible prosecution—which is her constitutionally protected right—has caused no demonstrable prejudice to the Defendants' ability to conduct relevant discovery.

To be sure, the posting of a sign like this in the Medic's Office in the Montgomery County Jail is a stinging indictment of attitudes toward inmate medical complaints in that office. It is highly probative of the attitude of the jail staff toward inmate medical complaints. There is no question why Defendants have sought repeatedly to exclude the exhibit and refuse to accept this Court's prior determination that the exhibit is admissible. Nevertheless, Defendants here are not seeking testimony from the person who actually posted the sign. Defendants have not revealed that person's identity, although it is clear that it is known to them from the investigation. Nor are they seeking testimony from those who read the sign and offered no objection or took no action during the time that it was posted. Instead, they are pursuing a vendetta against the person whom they believe to have leaked the evidence and who took down the sign. Is it any wonder under such circumstances, that Ms. Angerer fears possible prosecution as a continuation of this vendetta?.

### III. CONCLUSION

The Montgomery County Defendants' motion for reconsideration must be denied. As this Court has already determined, the photographs comprising PX 44 photos are relevant, admissible evidence. Jennifer Angerer's assertion of her fifth amendment rights does not change that calculus. To the extent that Defendants' motion is asking the Court determine whether her assertion of that right was justified, it is clear that it was. Montgomery County has made clear its position that

exposing the operations of the jail to examination, in the press or in court, by making and distributing copies of documents, is a prosecutable crime, and they have acted on that position in the past. Ms. Angerer's fear that she could face possible prosecution was justified and made the assertion of her privilege the only reasonable course. The only comprehensible purpose of the County in pursuing her deposition would be for the County to continue its investigation to ferret out who leaked the photos, a purpose with no connection to any issue of relevance in the case at bar. To the extent that Defendants are asking the Court to override Ms. Angerer's right against self-incrimination, that request also must be denied.

Finally, there is no justification for excluding the photos in PX44 as a discovery sanction, or otherwise, based on Ms. Angerer, as a third-party witness, asserting her Fifth-Amendment rights. In the first place, her assertion of that privilege was wholly justified. And, in the second place, that assertion has not prejudiced the Defendants in the least. None of the areas of inquiry prevented by Ms. Angerer's assertion has any relevance to any issue in this case. For this reason also, Defendants' motion for reconsideration must be denied.

                      Respectfully submitted,

                      */s/ Dwight D. Brannon*
                      Dwight D. Brannon (0021657)
                      Douglas D. Brannon (0076603)
                      Matthew C. Schultz (0080142)
                      BRANNON & ASSOCIATES
                      130 W. Second St.    Suite 900
                      Dayton, OH   45402
                      Telephone:    (937) 228-2306
                      Facsimile:    (937) 228-8475
                      E-Mail:      dbrannon@branlaw.com
                                  douglasbrannon@branlaw.com
                                  mschultz@branlaw.com

/s/ *Michael L. Wright*
Michael L. Wright (0067698)
WRIGHT & SCHULTE LLC
130 W. Second St.   Suite 1600
Dayton, OH   45402
Telephone:   (937) 222-7477
Facsimile:   (937) 222-7911
E-Mail:   mwright@yourohiolegalhelp.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

A copy of the foregoing pleading has been served upon the following counsel of record via the electronic filing system for the United States Federal District, Southern District of Ohio on the date of filing same.

John B. Welch
Arnold Todaro & Welch Co. LPA
580 Lincoln Park Blvd., Suite 222
Dayton, OH   45419
Attorney for Defendants Phil Plummer, Montgomery County Board of Commissions, Jack Saunders EMT, and Naphcare, Inc.

Joseph D. Saks
Alex J. Hale
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 W. Third St.
P O Box 972
Dayton, OH 45422
Co-Counsel for Defendants Montgomery County Sheriff Phil Plummer and Montgomery County Board of Commissioners

Jeffrey C. Turner
Dawn M. Frick
Katherine L. Epling
8163 Old Yankee St., Suite C
Dayton, OH   45458
Attorneys for Defendants Sgt. DeLong, Officer Wagner and the City of Trotwood

/s/ *Dwight D. Brannon*
Dwight D. Brannon