**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JEFFREY DAY** | ) | **Case No. 3:16-cv-00437** |
| **Plaintiff,** | ) | **Judge Thomas M. Rose** **Magistrate Judge Ovington** |
| **vs.** | ) | |
| **SGT KIM DELONG, et al.,** | ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION ON BEHALF OF DEFENDANTS JACK SAUNDERS, EMT, AND NAPHCARE, INC., TO EXCLUDE OR, IN THE ALTERNATIVE, TO COMPEL** |
| **Defendants.** | ) | |

---

**MEMORANDUM**

I. **INTRODUCTION**

Defendant Jack Saunders, EMT, and Naphcare, Inc., (hereinafter, collectively, the "Naphcare Defendants") have, like the Montgomery County Defendants, asked the Court to exclude Plaintiff's exhibit PX 44: two photos showing a sign posted on a bulletin board inside the Montgomery County Jail's medic's office that reads "If you can talk then you obviously can f***ing breathe." The majority of Defendants' motion is addressed to arguments of relevancy. The Naphcare Defendants argue that the sign in question is irrelevant because it was not posted in the medic's office until after Jeffrey Day was released from the Montgomery County Jail. Naphcare's argument ignores the fact that Plaintiff has alleged a pattern and practice of deliberate indifference to inmates' serious medical needs. The fact that this pattern and practice endured for years after Mr. Day was released is both probative and admissible. These arguments have already been addressed extensively in briefing before. This Court has already ruled on them in its in Entry and Order of February 12, 2019 that the PX 44 photos "are **ADMISSIBLE**." (Doc # 135, PageID#

3471).

The new arguments raised by Naphcare Defendants arise from the recent deposition of a third-party witness, former jail medic, Jennifer Angerer, whom Defendants believe was the photographer, and who raised her Fifth Amendment privilege against self-incrimination during her deposition. Without citing to any authority supporting its position, Defendants argue that Ms. Angerer's assertion of her Fifth Amendment rights somehow affects the admissibility of PX 44. Defendants make this argument despite the fact that they acknowledge, "Ms. Angerer herself …[has] nothing to do with this case." (Doc.# 151, PageID# 3688.) Defendants make no clear argument at all how Ms. Angerer's refusal to testify bears on any relevant issue in this case. They cite no case authority even hinting that a third-party witness's assertion of a privilege should somehow affect the Plaintiff's ability to submit evidence which the Court has already found admissible without her testimony.

## II. ARGUMENT

### A. Plaintiff Did Not Misrepresent the date of PX44.

In the introduction to its Motion, Naphcare argues that the Court erred in it is original determination finding the photos admissible, and did so because Plaintiff misrepresented to the Court "that such a sign was hanging in Mr. Saunders' office at the time he screened Mr. Day on November 27, 2015." (Doc. #151; PageID #3683) This assertion, itself, is a misrepresentation, both of the basis of this Court's decision and of Plaintiff's arguments regarding the exhibit. In his response to the original Motion in Limine seeking to exclude this exhibit, Plaintiff directly addressed the argument that the photographs were irrelevant because the objectionable sign was not posted at the time of Mr. Day's arrest. Plaintiff noted:

> Lastly, the County claims that these photos are irrelevant because they appear to show the state of the bulletin board sometime after Mr. Day was released from the Montgomery County Jail. This argument ignores the fact that Plaintiff has alleged

> a pattern and practice of deliberate indifference to inmates' serious medical needs. The fact that this pattern and practice endured for years after Mr. Day was released is probative and admissible. For this reason, also, the County's Motion should be denied.

These arguments remain valid. The Defendants' arguments regarding the relevance of the photographs based on their being from a later date were already rejected by this Court. The fact that a sign like this was posted in the Medic's Office is highly probative of the attitude of the jail staff toward inmate medical complaints. It indicates that the first reaction of the staff is to disbelieve and ignore medical complaints from inmates. This is certainly relevant to the fact that Mr. Day's multiple requests for medical care were ignored for five days. This argument that only a sign posted on the day of Mr. Day's injury would be admissible, ignores the fact that Plaintiff has alleged a pattern and practice of deliberate indifference to inmates' serious medical needs. The fact that this pattern and practice endured for years after Mr. Day was released is both probative and admissible, as this Court already held.

**B. PX 44 is Relevant and Admissible.**

The majority of the Naphcare Defendants' motion is addressed to the argument that PX44 is irrelevant because the sign shown in the photographs was not posted when Defendant Saunders evaluated Mr. Day. Again, this a repeat of argument that this Court already rejected in finding PX44 admissible. The evidence shown in Plaintiff's Exhibit, PX 44. is relevant with respect to Plaintiff's claims against Naphcare and the Montgomery County Defendants. The posting of a sign like this in the Medic's Office in the Montgomery County Jail is a stinging indictment of attitudes toward inmate medical complaints in that office. It is highly probative of the attitude of the jail staff toward inmate medical complaints. There is no question why Defendants have sought repeatedly to exclude the exhibit and refuse to accept this Court's prior determination that the exhibit is admissible.

**C. PX 44 has already been Authenticated.**

The Naphcare Defendants' other argument is that issues regarding the authentication of PX44 should prevent its being used at trial. The ordinary rule of federal evidence is that photographs are authenticated by "evidence sufficient to support a finding that the [photograph] is what the proponent claims it is," Fed. R. Evid. 901(a). See *United States v. Thomas*, 701 F. App'x 414, 419 (6th Cir. 2017). A photograph may be authenticated through the testimony of a witness with knowledge who testifies that the photograph is an accurate representation of the scene depicted. See *Shahid v. City of Detroit*, 889 F.2d 1543, 1546 (6th Cir. 1989). It is not necessary to authenticate a photograph through the testimony of the photographer

The Montgomery County Defendants have submitted, as an attachment to their motion for reconsideration, the declaration of Major Matthew Haines of the Montgomery County Sheriff's office, showing that the Sheriff's office conducted an investigation of the photographs and that they are authentic representations of the bulletin board in question. Major Haines' statement, which must be treated as a statement of a party opponent, admissible as a non-hearsay statement, Fed.R.Evid. 801(d)(2), establishes that the sign in question was, in fact, posted to the bulletin board. It was not posted by Jennifer Angerer, but by a different Naphcare employee. (Doc. # 148-1, PageID 3643, ¶6a.) The photographs accurately show how the bulletin board looked between October 9, 2018 and October 19, 2018. Indeed, the scene that the photographs represent is exactly the same as that depicted in Exhibits A-3, A-4, and A-5. (Id., PageID 3648-50.)[1] At this point, if authentication of the documents is the issue, forcing Ms. Angerer to testify at this point is wholly superfluous, and is wholly irrelevant to any issue in the case

[1] Major Haines' declaration identifies these as Exhibits B-3 through B-5, although they are labeled differently. This appears to be a typographical error.

Even if Major Haines had not submitted his declaration, even if he had not authenticated photos showing the exact same billboard at the exact same time, Plaintiff's Exhibit PX 44 could be authenticated by any person or every person who saw the bulletin board while the sign was posted to it and remembered it. Since the sign was up as recently as October of 2018, approximately six months ago, no person would be required to tax their memory overmuch to do so.

The Naphcare Defendants also object that Plaintiff asserted attorney-client privilege in connection with the interrogatory: "identify by name, address, and telephone number any person you intend to call as a witness to testify regarding the photograph identified as PX 44." Plaintiff's assertion of privilege in response to this interrogatory is based on the fact that the interrogatory is seeking to discover, not facts, but Plaintiff's trial strategy: which witnesses Plaintiff intends to question regarding PX 44. The interrogatory was a direct attempt to inquire into the mental impressions, conclusions, and opinions of Plaintiff's attorneys, which are not subject to discovery. The interrogatory in question here is effectively identical to those which the Court found were objectionable in *Palombaro v. Emery Fed. Credit Union,* (S.D. Ohio No. 1:15-cv-792, 2017 U.S. Dist. LEXIS 6365, at *18-19 (Jan. 17, 2017). The Court, affirming objections to three interrogatories asking Plaintiffs "how will you establish" various claims, explained

> Interrogatories 11, 12 and 13 do not seek the facts giving rise to plaintiffs' allegations of kickbacks and split fees, nor do they seek facts concerning the diligence of putative class members in pursuing their claims. Instead, Interrogatories 11 and 12 ask plaintiffs to describe *how* they plan to "establish" that alleged referral payments and fee-splitting payments will be tied to each putative class member for purposes of the anticipated class certification motion. Interrogatory 13 asks plaintiffs to describe *how* they plan to "ascertain" the diligence taken by each putative class member to investigate their RESPA claims. (*See* Doc. 273-1 at 5-6). The questions do not seek underlying facts that would shed light on the class certification issues, but rather plaintiffs' legal strategy. Interrogatories 11, 12 and 13 seek responses that are intertwined with the mental impressions, conclusions, opinions, or legal theories of plaintiffs' attorneys as to

> *how* they will apply the underlying facts to prove the Rule 23 elements in their anticipated class certification motion. Although the factual information underlying the alleged kickbacks, split fees, and diligence used by putative class members is discoverable, *how* plaintiffs and their attorneys will use this factual information to establish that a particular alleged kickback was made in exchange for the referral of each putative class member; to establish that a particular fee was split between Genuine Title and defendant; and to ascertain the diligence of each putative class member is not. This information constitutes protected work product and is shielded from discovery. *See Hickman*, 329 U.S. at 510-11.

The same objection was properly raised in response to the interrogatory in this instance. The Naphcare Defendants state: "The clear purpose of the interrogatory was to not only investigate Plaintiff's Exhibit 44 but to ask Plaintiff who and/or how Plaintiff would identify and authenticate the exhibit." (Doc. 151, PageID# 3685) Thus, the Naphcare Defendants were not asking Plaintiff to identify witnesses who had certain information, or provide other factual information. The Defendants were asking how Plaintiff's counsel intended to establish facts, and which witnesses at trial his counsel intended to ask certain questions to. This is wholly a matter of trial strategy—which is merely preliminary at this stage in any event.—and, as the court held in *Palombaro,* is not a proper subject for an interrogatory. The objection was proper.

The Naphcare Defendants assert that "it [is] clear that Plaintiff has no intention of authenticating Plaintiff's Exhibit 44." (Doc. 151, PageID# 3686) On the contrary, Plaintiff fully intends to submit Plaintiff's Exhibit 44 in conformity with the Federal Rules of Evidence. Plaintiff could authenticate the document any number of different ways, including simply through the sworn statement of Major Haines, which is admissible as a non-hearsay statement of an opposing party and which quite clearly shows that PX 44 is an accurate representation of the scene depicted, *Shahid,* 889 F.2d at 1546, i.e., the Medic's Office bulletin board in October 2018. Furthermore, each and every person that saw the sign while it was posted is also capable of authenticating it. How Plaintiff's counsel ultimately chooses to authenticate the document is a matter of trial strategy

and depends, at least in part, on the answers Plaintiff receives when he examines witnesses.

**D. Jennifer Angerer had the right to assert a privilege against self-incrimination.**

The Naphcare Defendants also argue that Ms. Angerer lacked a valid basis to assert her privilege against self-incrimination. They argue that "Defendants have not and do not allege any improper criminal conduct on the part of Ms. Angerer." (Doc. #151, PageID #3688.) Whether or not the Naphcare Defendants have alleged improper criminal conduct is beside the point. The applicable standard is whether a witness has a reasonable cause to fear a possible prosecution. *In re: Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution does not depend upon the Likelihood, but upon the Possibility of prosecution.") "The absence … of a pending or likely prosecution does not rule out a finding that the privilege asserted is well-founded." *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1228 (S.D.N.Y. 1980). In that regard, it is relevant that Montgomery County has repeatedly asserted in pleadings before this Court, where its counsel were Montgomery County Prosecutors, that it is "illegal" to copy documents in the Montgomery County Jail and that possession of such copies constitutes possession of "stolen property." Regardless of the validity of that position—which is, indeed, highly questionable—it states the position of the County and its prosecutors. Ms. Angerer's fear of self-incrimination, in light of the County's professed position was—and is—wholly reasonable.

The Montgomery County Defendants and their representatives in the Montgomery County Prosecutor's office have repeatedly and forcefully asserted that copying or dissemination of documents from the Sheriff's office constitutes a crime, and that is precisely what the Montgomery County Defendants are alleging Ms. Angerer has done. According to positions repeatedly asserted by Montgomery County and the Prosecutor's Office, copying a sheriff's document and giving that

copy to another person both constitute "crimes."

The Fifth Amendment allows a witness in a civil matter to refuse to answer questions when to do so would involve substantial risk of self-incrimination. *United States v. U.S. Currency*, 626 F.2d 11, 14 (6th Cir. 1980). Any refusal to answer, however, must be a valid assertion of rights under the Fifth Amendment and it is for the Court to decide whether a witness's silence is justified. *Morganroth v. Donovan*, 718 F.2d 161, 167 (6th Cir. 1983). A witness's mere declaration that he might incriminate himself is not enough to justify a failure to answer, *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951), as it remains the role of the court to consider "the implications of the question, in the setting in which it is asked", *id.* at 486-87. The witness must provide "an explanation of why [a question] cannot be answered." *Id.*

A witness's refusal to answer may be upheld where the witness has "reasonable cause to apprehend a real danger of incrimination*." Id.* Critically, this danger must be real, and not a "fanciful possibility of incrimination." *U.S. Currency*, 626 F.2d at 14; *Morganroth*, 718 F.2d at 167. The court should not weigh the ***probability*** of prosecution in considering the assertion of the privilege though, but should instead examine the ***possibility*** of prosecution. *W.J. Usery*, 87 F.R.D. at 683 ("[A]s long as prosecution is possible . . . [the witness] has such reasonable cause [to assert the Fifth Amendment.]"); see also *In re: Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979) ("[T]he right to assert one's privilege against prosecution does not depend upon the Likelihood, but upon the Possibility of prosecution.") (internal quotation omitted); Indeed, the probability of prosecution is typically irrelevant in examining the privilege, unless a legal bar, such as the expiration of the statute of limitations or a grant of immunity, would prevent any criminal prosecution. *W.J. Usery*, 87 F.R.D. at 683; *In Re: Folding Carton*, 609 F.2d at 872.

In the case of *Guglielmo v. Montgomery County, Ohio*, S.D. Ohio No. 3:17cv6, throughout

the course of that litigation, the Defendant, Montgomery County, asserted repeatedly, through its counsel, while represented by the Montgomery County Prosecutor's office, that copying documents and giving those copies to others constitutes theft, receipt of stolen property, and criminal conspiracy. See Doc. #62, PageID #625 ("[Former Deputy Sheriff Eric Banks] states facts that could be construed to constitute a crime.") ("Mr. Banks testified that he and Mr. Creech illegally copied surveillance video from the Montgomery County Jail, then met with Mr. Brannon and gave this stolen property to Mr. Brannon."); *id*. at 628 ("regarding Mr. Bank's [sic] testimony that he took property from the … Jail in 2016 and transmitted this stolen property to Mr. Brannon."); Doc. #83, PageID #1613 ("he testified that he engaged in a potential crime with Attorney Brannon.") ("a witness testified during his deposition in March of 2018 that he and another individual illegally copied surveillance video from the Montgomery County Jail, then met with Attorney Douglas Brannon and gave this stolen property to Attorney Brannon."); *id*. at 1613, n.2 ("Defendants had not yet been informed by Gerhardstein and Branch that they in fact possessed the alleged stolen property that Mr. Banks testified to stealing and transmitting to Attorney Douglass [sic] Brannon."); *id*. at 1614 ("Per Mr. Banks testimony, his non-privileged relationship with Attorney Douglas Brannon deals with the alleged theft of property from the Montgomery County Jail in 2016 and possibly its subsequent transmittal to The Washington Post among other entities.") ("if one witness is claiming to have gone to Attorney Brannon for assistance in the commission of a crime …."); Doc. #88, PageID #1638 ("Per Mr. Banks' testimony, he and Mr. Creech stole government property."); *id*. at 1639 ("If Mr. Banks' testimony on this issue is true and accurate, then he and Mr. Creech committed a crime in the stealing of the videotape from Montgomery County.") ("If Mr. Banks' testimony on this issue is true and accurate, then he and Mr. Creech committed a crime in the stealing of the videotape from Montgomery County and in it

[sic] subsequent transmission or transmissions to other person and entities."); *id*. at 1639, n.1 ("there is also evidence now that the stolen video was transmitted to The Washington Post with an advertising message about The Brannon Law Firm."); *id*. at 1640 ("Eric Banks testified that he and Mr. Creech took the stolen property and gave it to Attorney Brannon.") ("Again, Mr. Banks testified that he and Mr. Creech stole the video tape and then gave it to Attorney Doug Brannon.") ("the taking of this video and any subsequent transmissions of it would constitute crimes under Ohio law per Mr. Banks' testimony.") ("Eric Banks testified that he and Mr. Creech took the video from their employer and then transmitted it to Attorney Douglas Brannon."); *id*. at 1641 ("Based upon and according to the testimony of Eric Banks, he engaged in a crime by stealing property from Montgomery County and then transmitted the stolen property to Attorney Douglas Brannon with Ransley Creech. These actions were in violation of criminal law ….").

In each of these instances, although counsel for the defendants at that time asserted that the witness, Mr. Banks, had testified that he had "committed crimes" or "engaged in a conspiracy," this is a "gross mischaracterization," as noted by Magistrate Judge Ovington in her decision of June 1, 2018 (Doc #96, PAGEID #1690) ("Defendants' summary is a gross mischaracterization of Mr. Banks' testimony.") Mr. Banks testified only that he made a copy of the video. The characterization of that conduct as a prosecutable crime was wholly attributable to Montgomery County through its attorneys, including the prosecutors, who filed memoranda in this Court very directly asserting that position. The County's position, moreover, was not just posturing. It acted. A complaint was made against Mr. Guglielmo's counsel based on the theory that such copies of MCSO documents constituted receipt of stolen property.

The question then posed is: does a person who worked in the Montgomery County Jail have "reasonable cause to apprehend" that she might be prosecuted for copying documents and

then disseminating documents, where the County prosecutors have repeatedly, in legal filings, asserted that such conduct constitutes, amongst other things, theft, misuse of stolen property, and criminal conspiracy. Again, it is not necessary that Ms. Angerer fear actual conviction for these alleged crimes. She need only fear a genuine possibility of criminal prosecution. To do that, she need only take the Montgomery County Defendants and their counsel at their word.

**E. Jennifer Angerer's assertion of her privilege against self-incrimination has no bearing on the admissibility of PX 44.**

It must be noted that the Naphcare Defendants have cited no case authority whatsoever supporting their position that, somehow, the assertion of Fifth-Amendment rights by a third-party witness in a civil case affects the admissibility of an exhibit submitted by Plaintiff. The gist of Defendants' argument appears to be that PX 44 should be excluded as a discovery sanction, preventing the Plaintiff from using evidence already deemed admissible by the Court because of a third-party witness's assertion of her constitutional rights. It is not unsurprising that Defendants have cited no such authority in support of that position, because the argument for sanctions under such circumstances is so inherently illogical.

In any event, as noted above, Ms. Angerer's fear that she could be prosecuted was wholly reasonable in light of the Montgomery County Defendants' repeated assertions that similar conduct constituted a "violation of criminal law" and that the Defendants' counsel is tasked with enforcing criminal law in Montgomery County. Although the logic of Defendants' argument is not clear, it does appear that if Ms. Angerer's position with respect to her right against self-incrimination was justified—as it was—the Defendants' motion to exclude and motion to compel must be denied. Defendants have alleged no other basis on which to exclude the document other than those upon which this Court has already ruled in favor of admissibility.

To the extent that Defendants are suggesting that Ms. Angerer's testimony is necessary to authenticate the document, that suggestion cannot withstand scrutiny. The ordinary rule of federal evidence is that photographs are authenticated by "evidence sufficient to support a finding that the [photograph] is what the proponent claims it is," Fed. R. Evid. 901(a). See *United States v. Thomas*, 701 F. App'x 414, 419 (6th Cir. 2017). A photograph may be authenticated through the testimony of a witness with knowledge who testifies that the photograph is an accurate representation of the scene depicted. See *Shahid v. City of Detroit*, 889 F.2d 1543, 1546 (6th Cir. 1989). As noted above, there is ample evidence in the statement of Major Matthew Haines that Plaintiff's Exhibit 44 is an accurate representation of the bulletin board and sign as they existed between October 9, 2018, and October 19, 2018. Indeed, the scene that the photographs represent is exactly the same as that depicted in Exhibits A-3, A-4, and A-5. (Doc.# 148-1, PageID 3648-50.)[2] At this point, forcing Ms. Angerer to testify is wholly superfluous, and is wholly irrelevant to any issue in the case

It is worth noting that the Naphcare Defendants have not sought testimony from the County or from its employees regarding the posting of the sign. The Montgomery County Defendants have not revealed the identity of the Naphcare employee who posted the sign, although it is clear that it is known to them from the investigation. Nor are they seeking testimony from those who read the sign and offered no objection or took no action during the time that it was posted. The Naphcare Defendants have ample opportunity to inquire of their own employees, or through their co-defendants, regarding when, how, and why this sign was posted. They have not done so. The difference in the way all of the Defendants in this case have treated Jennifer Angerer, who threw

[2] Major Haines' declaration identifies these as Exhibits B-3 through B-5, although they are labeled differently. This appears to be a typographical error.

the sign away, and then lost her job, as compared to the individual who posted the sign, is evidence in itself of a pattern and practice of deliberate indifference.

## III. CONCLUSION

The Naphcare Defendants' motion must be denied. As this Court has already determined, the photographs comprising PX 44 are relevant, admissible evidence. Jennifer Angerer's assertion of her Fifth Amendment rights does not change that calculus. To the extent that Defendants' motion is asking the Court determine whether her assertion of that right was justified, it is clear that it was. Montgomery County has made clear its position that exposing the operations of the jail to examination, in the press or in court, by making and distributing copies of documents, is a prosecutable crime, and they have acted on that position in the past. Ms. Angerer's fear that she could face possible prosecution was justified and made the assertion of her privilege the only reasonable course. To the extent that Defendants are asking the Court to override Ms. Angerer's right against self-incrimination, that request also must be denied.

Finally, there is no justification for excluding the photos in PX44 as a discovery sanction, or otherwise, based on Ms. Angerer, as a third-party witness, asserting her Fifth-Amendment rights. In the first place, her assertion of that privilege was wholly justified. And, in the second place, that assertion has not prejudiced the Defendants in the least. None of the areas of inquiry prevented by Ms. Angerer's assertion has any relevance to any issue in this case. The photographs themselves have already been authenticated by the Montgomery County Defendants. In any event, they could be easily authenticated by any person who witnessed the sign posted to the Medic' office bulletin board. For this reason, the Naphcare Defendants' motion must be denied.

Respectfully submitted,

*/s/ Dwight D. Brannon*
Dwight D. Brannon (0021657)
Douglas D. Brannon (0076603)
Matthew C. Schultz (0080142)
BRANNON & ASSOCIATES
130 W. Second St.     Suite 900
Dayton, OH   45402
Telephone:     (937) 228-2306
Facsimile:      (937) 228-8475
E-Mail:           dbrannon@branlaw.com
                       douglasbrannon@branlaw.com
                       mschultz@branlaw.com

/s/ *Michael L. Wright*
Michael L. Wright (0067698)
WRIGHT & SCHULTE LLC
130 W. Second St.     Suite 1600
Dayton, OH   45402
Telephone:     (937) 222-7477
Facsimile:      (937) 222-7911
E-Mail:   mwright@yourohiolegalhelp.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

   A copy of the foregoing pleading has been served upon the following counsel of record via the electronic filing system for the United States Federal District, Southern District of Ohio on the date of filing same.

John B. Welch
Arnold Todaro & Welch Co. LPA
580 Lincoln Park Blvd., Suite 222
Dayton, OH   45419
Attorney for Defendants Phil Plummer, Montgomery County Board of Commissions, Jack Saunders EMT, and Naphcare, Inc.

Joseph D. Saks
Alex J. Hale
Assistant Prosecuting Attorney
Montgomery County Prosecutor's Office
301 W. Third St.
P O Box 972
Dayton, OH 45422
Co-Counsel for Defendants Montgomery County Sheriff Phil Plummer and Montgomery County Board of Commissioners

Jeffrey C. Turner
Dawn M. Frick
Katherine L. Epling
8163 Old Yankee St., Suite C
Dayton, OH  45458
Attorneys for Defendants Sgt. DeLong, Officer Wagner and the City of Trotwood

            /s/ *Dwight D. Brannon*
            Dwight D. Brannon