IN THE UNITED STATES FEDERAL DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JEFFREY DAY | : | CASE NO. 3:16-cv-437 |
| Plaintiff, | : | Judge Thomas M. Rose |
| vs. | : | |
| SGT. KIM DELONG, et al | : | |
| Defendants | : | |
| | : | |

**REPLY OF DEFENDANTS MONTGOMERY COUNTY SHERIFF ROBERT STRECK AND MONTGOMERY COUNTY BOARD OF COMMISSIONERS TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE RENEWED MOTION IN LIMINE TO EXCLUDE PX 44 AND MOTION IN ALTERNATIVE TO COMPEL DEPOSITION TESTIMONY**

Defendants Montgomery County Sheriff Robert Streck and the Montgomery County Board of Commissioners ("County Defendants") have filed a renewed motion in limine to exclude Plaintiff's Exhibit 44 (PX 44). In the same filing (Doc. 148), these Defendants moved the Court, in the alternative, for an order reopening the deposition of witness Jennifer Angerer and compelling Ms. Angerer to answer questions for which she asserted the privilege against self-incrimination.

These Defendants argued that the Court should exclude PX 44 because it has no probative value, and because the risk of unfair prejudice, misleading the jury, and confusing the issues would substantially outweigh the minimal probative value Plaintiff claims it has. As to reopening Ms. Angerer's deposition, these Defendants argued that Ms. Angerer lacked any reasonable cause to apprehend a real danger of incrimination because Ms. Angerer is not under

criminal investigation; because the conduct of Ms. Angerer related to PX 44 that is claimed to be privileged—her use of her cell phone—was investigated not as a crime but rather as a policy violation; and because the investigation as to the policy violation is closed.

Plaintiff now argues that PX 44 is admissible, even though the sign depicted in PX 44 hung in the Jail in October 2018—nearly three years after the incident in this case—to show a pattern or practice of deliberate indifference to inmates' serious medical needs. Plaintiff's argument runs contrary to Sixth Circuit precedent that a pattern or practice can be shown only by identifying *prior instances* of similar misconduct. As such, the exhibit has no probative value. Plaintiff's counsel also further demonstrates, in his Responses in Opposition to the motions of the County Defendants and of NaphCare, Inc. and Jack Saunders (Docs. 152, 153) that if PX 44 is admitted, it will inject unfair prejudice into the proceedings, will mislead the jury, and will confuse the issues.

Plaintiff also argues in his Responses in Opposition that the Court should deny the requests of the County Defendants, NaphCare, and Jack Saunders to compel Ms. Angerer to answer questions related to PX 44. Plaintiff lacks standing to challenge the County Defendants' subpoena to Ms. Angerer and, as such, the Court should disregard all arguments of Plaintiff pertaining to the motions of the County Defendants, NaphCare, and Jack Saunders to compel Ms. Angerer's testimony.

Ms. Angerer's counsel (Dwight Brannon) has received service of the County Defendants' motion to compel through the Court's filing system, yet Ms. Angerer has failed to respond to the County Defendants' motion, which was filed on April 12, 2019. (Doc. 148.) The twenty-one day deadline has passed for Ms. Angerer to file a memorandum in opposition to the County Defendants' motion to compel, which alone is grounds for granting the County Defendants'

2

motion. *See* S.D. Ohio Loc.R. 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees…. No additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown.").

Even if the Court were to entertain Plaintiff's arguments as to why the Court should not compel Ms. Angerer to testify, Plaintiff's arguments are baseless. Ms. Angerer did not have reasonable cause to apprehend a real danger of incrimination because there is no possible crime with which Ms. Angerer could be charged. Ms. Angerer did not steal County property; rather, she appears to have taken photographs on her own cell phone. If Ms. Angerer did in fact provide the photographs to Plaintiff's counsel, she was giving Plaintiff's counsel her own property.

Plaintiff also argues—without any factual support—that the only purpose for which the County Defendants are pursuing Ms. Angerer's deposition is to continue an investigation into Ms. Angerer. Plaintiff ignores the declaration of Major Matthew Haines, in which Major Haines attested that (1) Ms. Angerer's use of a cell phone and cell phone camera was investigated as a policy violation; (2) the investigation of the policy violation is closed; and (3) no person has ever been under criminal investigation by the MCSO for any conduct related to the bulletin board sign. *See* Haines Decl. (Doc. 148-1).

Finally, Plaintiff argues that because other witnesses can authenticate the sign and testify regarding PX 44, Ms. Angerer's testimony would be irrelevant. Plaintiff ignores the fact that Ms. Angerer worked as a jail medic, in the jail medic's office, during the eleven (11) days in October of 2018 in which the sign was hanging up—in the jail medic's office. If Plaintiff's counsel is to be permitted to argue that the sign is indicative of a non-caring attitude among jail staff to inmate medical complaints, these Defendants should be permitted to ask Ms. Angerer

3

whether she ever witnessed such an attitude among the jail staff with whom she worked, and whether she ever witnessed any jail staff comment upon the sign.  And if Plaintiff's counsel is to be permitted to argue that the sign was hanging in the Jail "forever," these Defendants should be permitted to ask Ms. Angerer whether she ever saw the sign in the Jail at any time other than October 9, 2018 to October 19, 2018.  These and other questions to Ms. Angerer as to PX 44 are reasonably calculated to lead to the discovery of admissible evidence.

For all of these reasons, this Court should grant these Defendants' renewed motion in limine and exclude PX 44.  In the alternative, this Court should grant these Defendants' motion to reopen Ms. Angerer's deposition and compel her testimony regarding PX 44.

### I. The Court should exclude PX 44.

This Court should exclude PX 44 because it has no probative value.  Even if it has any probative value, the risk of unfair prejudice, misleading the jury, and confusing the issues substantially outweigh any such probative value.  Although this Court previously ruled that PX 44 was admissible, this Court should reconsider its prior ruling.  '[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Louisville/Jefferson Cty. Metro Govt. v. Hotels.com*, L.P., 590 F.3d 381, 389 (6th Cir.2009) (quoting *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir.2004)).  Here, there is both new evidence available and a need to correct a clear error.

First, the Court should reconsider its prior ruling based on the following new evidence: (1) the identification of the dates—October 9, 2018 to October 19, 2018—when the sign was hanging on the bulletin board in the Jail medic's office; and (2) arguments of Plaintiff's counsel

that are likely to confuse the issues and mislead the jury in this matter. As noted in these Defendants' Renewed Motion, Plaintiff's counsel has claimed that the sign was hanging in the Jail "forever"; for a month; and when Jeffrey Day was incarcerated. Plaintiff's counsel has also requested that the County Defendants admit that all of the following persons had both seen Plaintiff's Exhibit 44 at the Montgomery County Jail and are able to testify as to the exhibit's authenticity: seventeen (17) current and former Sheriff's Office officials and employees; two (2) NaphCare employees, including Defendant Jack Saunders, who was not even employed with NaphCare when the sign was hanging up; and "each and every other Corrections Officer, Deputy, and Command Staff of the Montgomery County Jail." Pl.'s Second Requests for Admissions to County Defendants, Requests Nos. 4 to 43 (Doc. 148-2, PID 3665-70); *see also* Second Aff. of Jack Saunders (Doc. 151, PID 3692) (Saunders not employed with NaphCare in October of 2018).

This new evidence demonstrates that introducing PX 44 at trial will confuse the issues and mislead the jury, as well as unfairly prejudice these Defendants. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury…" Fed. R. Evid. 403. Even if PX 44 had any probative value, that probative value would be substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury. The type of prejudice for which evidence may be excluded has been defined as "'a genuine risk that the emotions of the jury will be excited to irrational behavior.'" *Westfield Ins. Co. v. Harris*, 134 F.3d 608, 613 (4th Cir.1998) (quoting *Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir.1988)).

Here, there is a genuine risk that PX 44 will excite the emotions of the jury to irrational behavior, and that risk is disproportionate to the probative value of the evidence—which is zero.

*See id.* (evidence may be excluded for prejudice where such risk is disproportionate to the probative value of the offered evidence). It appears that Plaintiff's counsel will inject such unfair prejudice into the trial by arguing—without any evidence—that all NaphCare employees and Jail corrections staff members saw and approved of the sign, which, according to Dwight Brannon, was hanging in the Jail "forever."

The fact remains that the sign was hanging in the jail medic's office—one room within the Jail—for a period of eleven (11) days, nearly three years after Plaintiff left the Jail. Plaintiff counsel's new arguments, coupled with the evidence of the date on which the sign was hanging up, is new evidence sufficient for the Court to reconsider its prior ruling and exclude PX 44.

Second, this Court should reconsider its prior ruling to correct a clear error. Plaintiff intends to use PX 44 to as evidence of a pattern or practice of deliberate indifference. To establish a *Monell* violation, a plaintiff must identify a policy or custom that was the moving force behind the constitutional violation and show that the violation arose as a result of deliberate indifference to the plaintiff's rights. *Sexton v. Kenton Cty. Detention Ctr.*, 702 F.Supp.2d 784, 790 (E.D.Ky.2010) (citing *Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir.1996)). The plaintiff must "show the existence of a municipal policy or custom *leading to* the alleged violation." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015) (emphasis added). Showing a pattern or practice requires a showing of "several separate instances" of *prior* unconstitutional conduct. *Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005).

The sign hanging on the bulletin board in the Jail medic's office cannot have "led to" or "caused" the alleged violation in this case, when the sign was hanging in the Jail nearly three years after Plaintiff was released from Jail. PX 44 also has no probative value as to any punitive damages to Jack Saunders, as Mr. Saunders was not working at the Jail in October of 2018, when

the sign was hanging up. Finally, even if PX 44 had any probative value as to Plaintiff's claim against NaphCare for medical negligence (which is does not), PX 44 should be excluded because the potential for unfair prejudice substantially outweighs any such probative value. It is likely that even given a proper instruction to disregard PX 44 as to the sole claim against the County Defendants—a claim for municipal liability under § 1983—"the jury will mistakenly consider the evidence" against the County, which means that "there is a clear danger of unfair prejudice under Rule 403." 1 Federal Evidence § 4:13, Reasons for exclusion—Unfair prejudice (4th ed.). As such, it was clear error for the Court to rule that PX 44 is admissible.

**II.   The Court should order Ms. Angerer's deposition reopened and compel Ms. Angerer to answer questions posed to her at deposition.**

In his Responses in Opposition (Docs. 152 and 153) to the Motions of the County Defendants and NaphCare Defendants, Plaintiff also argues that the Court should not compel Ms. Angerer to answer questions regarding PX 44 posed by defense counsel. The Court should disregard all arguments Plaintiff makes regarding compelling Ms. Angerer to testify, because Plaintiff lacks standing to challenge the County Defendants' subpoena to Ms. Angerer.

"'[A]bsent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.'" *Novovic v. Greyhound Lines, Inc.*, No. 2:09–CV–00753, 2012 WL 252124, *8 (S.D.Ohio Jan. 26, 2012) (quoting *Donahoo v. Ohio Dep't of Youth Servs.,* 211 F.R.D. 303, 306 (N.D.Ohio 2002)) (internal quotation marks omitted). Rather, "'[t]he party to whom the subpoena is directed is the only party with standing to oppose it.'" *Id.* (quoting *Donahoo*, 211 F.R.D. at 306) . "The Fifth Amendment privilege against self-incrimination is a privilege personal to the witness." *United States v. Mayes*, 512 F.2d 637, 649 (6th Cir. 1975). As such, a party to a case cannot assert a nonparty witness's Fifth Amendment privilege against self-incrimination. *See Gordon v. Woods*, No. 1:09-cv-521, 2016 WL 5334595, *28 (W.D. Mich.

7

Sept. 23, 2016) (habeas petitioner could not assert his sister's Fifth Amendment privilege against self-incrimination).

Plaintiff has no claim of privilege as to Ms. Angerer's testimony because Ms. Angerer's claim of privilege is personal to Ms. Angerer. Plaintiff therefore has no standing to challenge the County Defendants' subpoena directed to Ms. Angerer. Accordingly, the Court should disregard any and all arguments in Documents Nos. 152 and 153—which were filed by Attorney Dwight Brannon *on behalf of Plaintiff*—as to the motions to compel filed by the County Defendants and NaphCare Defendants.

Even if this Court were to take into account arguments made by Plaintiff as to Ms. Angerer's testimony, Plaintiff's arguments are baseless. Plaintiff asserts, without any factual support, that the County is attempting to take Ms. Angerer's deposition as a pretext for "continu[ing] its investigation to ferret out who leaked the photos." (Doc. 152, PID 3711.) Plaintiff claims that Ms. Angerer has a reasonable fear of possible prosecution for a crime involving stolen property such as "theft, misuse of stolen property, and criminal conspiracy." *Id.* at PID 3704-06. Plaintiff argues that Ms. Angerer's fear of prosecution stems from filings that counsel for Montgomery County made in the case of *Guglielmo v. Montgomery County, Ohio*, S.D. Ohio No. 3:17-cv-00006. In the filings referenced by Plaintiff, counsel for Montgomery County argued that former Sheriff's Office Sergeant Eric Banks stole Sheriff's Office property and was involved in a criminal conspiracy when Banks copied a Jail surveillance video and, along with another Sheriff's Office employee, provided the video to Attorney Douglas Brannon. *See* Doc. 152, PID 3704-05 (recounting arguments made by counsel for County in *Guglielmo*).

Plaintiff now argues that the County Defendants are "abus[ing] civil discovery" to pursue a criminal investigation of Ms. Angerer for taking photographs of a bulletin board with her cell

8

phone and providing the photographs to counsel for Plaintiff. *Id.* at PID 3709-10. Plaintiff also accuses the undersigned counsel of acting "contrary to legal professionalism" by subpoenaing Ms. Angerer to assist the Sheriff's Office in this supposed criminal investigation. *Id.* at PID 3710.

Sheriff's Office Major Matthew Haines has signed a declaration, filed as Doc. 148-1, attesting that (1) Ms. Angerer's use of a cell phone and cell phone camera was investigated as a policy violation; (2) the investigation of the policy violation is closed; and (3) no person has ever been under criminal investigation by the MCSO for any conduct related to the bulletin board sign. Yet Plaintiff ignores the Declaration of Major Haines and instead claims, without any factual support, that a criminal investigation of Ms. Angerer by the County "continues," and that the subpoena directed to Ms. Angerer is mere pretext for investigating her criminally. There is no criminal investigation of Ms. Angerer for taking photographs or for providing such photographs to Plaintiff's counsel.

Moreover, such conduct does not constitute criminal conduct. Assuming that Ms. Angerer took the photographs identified as PX 44 with her own cell phone, and assuming that Ms. Angerer provided the photograph to Plaintiff's counsel, Ms. Angerer could not be prosecuted for any crime. Put simply, Ms. Angerer did not steal anything belonging to someone else—rather, she took photographs using her own cell phone. To be charged with theft, under Ohio law, the suspect must have, "with purpose to deprive the owner of property or services … knowingly obtain[ed] or exert[ed] control over either the property or services…" Ohio Rev. Code § 2913.02(A). Similarly, to be charged with receiving stolen property under Ohio law, the suspect must have "receive[d], retain[ed], or dispose[d] of property of another knowing or having reasonable cause to believe that the property ha[d] been obtained through commission of

9

a theft offense." Ohio Rev. Code § 2913.51(A). A "theft offense" includes conspiracy to commit theft. Ohio Rev. Code § 2913.01(K).

The visual image of the bulletin board in the Jail medic's office is not "property" that the County "owns." Likewise, the County does not "own" any photographs that Ms. Angerer took with Ms. Angerer's cell phone. Photographs on Ms. Angerer's cell phone are not "property of another"; rather, they are property of Ms. Angerer. If Ms. Angerer "disposed of" the photographs by providing them to Plaintiff's counsel, she would have been "disposing of" her own property. Plaintiff's argument that Ms. Angerer could be prosecuted, for taking a photograph on her cell phone, and providing the photograph to a third person, is the very definition of a mere imaginary, remote, and speculative possibility of prosecution. *See In re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983) (for a witness to validly assert the privilege, the witness must "show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution").

Further, Plaintiff's argument that the County Defendants have no basis to conduct discovery of Ms. Angerer is baseless. Plaintiff argues that because PX 44 can allegedly be authenticated by someone other than Ms. Angerer, and because the County Defendants can seek discovery from the person who hung PX 44 in the medic's office, Ms. Angerer's testimony would be "wholly irrelevant to any issue in this case." Doc. 152, PID 3708.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also Berryman v. SuperValu Holdings, Inc.*, S.D.Ohio No. 3:05CV169, 2008 WL 4934007, *3 (Rice, J., adopting report and recommendations of Ovington, M.J.) ("In order to be

10

discoverable in federal civil cases, information 'need not be admissible at the trial'—rather, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense,' so long as 'the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'")

Even if Plaintiff's testimony were not required to authenticate PX 44, authentication is not the sole basis on which a witness can be deposed. Ms. Angerer may very well have knowledge relevant to the County Defendants' defense of Plaintiff's claims as to PX 44. Plaintiff has now claimed, in three filings, that the bulletin board sign "is highly probative of the attitude of the jail staff toward inmate medical complaints. That is, the first reaction of the staff is to disbelieve and ignore medical complaints from inmates." Pl. Resp. to County Defs.' Mot. in Limine (Doc. 128, PID 3425); Pl. Resp. to County Defs.' Renewed Mot. and Mot. in Alternative to Compel (Doc. 152, PID 3701) (same); Pl. Resp. to Mot. of Saunders and NaphCare to Exclude and Mot. in Alternative to Compel (Doc. 153, PID 3715) (same).

It is uncontested that Ms. Angerer was a NaphCare employee at the time the sign was hanging in the Jail medic's office, from October 9, 2018 to October 19, 2018. It is also uncontested that, in October of 2018, Ms. Angerer worked as a jail medic in that very medic's office. Plaintiff is claiming that jail staff members exhibited an attitude conveyed by a sign that reads "if you can talk then you obviously can fucking breathe." There is no testimony on the record in this case that any NaphCare staff members or correctional staff member agreed with the statement depicted in the sign. The following testimony of Ms. Angerer is relevant to the County Defendants' defense of Plaintiff's claims as to PX 44: whether any Sheriff's Office or NaphCare witness in this case exhibited a non-caring attitude towards inmates' medical

11

conditions; whether any such witness saw the sign; and whether any such witness made any statements regarding the sign.

Ms. Angerer's testimony is also relevant to defending against the representation of Dwight Brannon at Ms. Angerer's deposition that the sign was hanging in the Jail "forever." As a person who worked in the jail medic's office for a long period of time, Ms. Angerer would be able to testify as to whether the sign was hanging in the medic's office at any time other than October 9, 2018 to October 19, 2018.

Plaintiff lacks standing to contest the subpoena directed to Ms. Angerer. However, even if Plaintiff could contest Ms. Angerer's subpoena, Ms. Angerer lacks reasonable cause to apprehend a real danger of incrimination, and as such, her answers to questions regarding PX 44 are not privileged. Information pertaining to PX 44, which is likely within Ms. Angerer's knowledge, is relevant to the County Defendants' defense of Plaintiff's claims regarding the exhibit, and questioning Ms. Angerer regarding PX 44 is reasonably calculated to lead to the discovery of admissible evidence. As such, if the Court does not exclude PX 44, it should order Ms. Angerer's deposition reopened and permit the County Defendants to question Ms. Angerer regarding PX 44.

### III. Conclusion

After the Court ruled that Plaintiff's Exhibit 44 is admissible, new evidence was produced that should cause the Court to reconsider its holding. The Court should also reconsider its holding because it clearly erred in ruling that PX 44 is admissible. In the alternative, if the Court denies the County Defendants' renewed motion to exclude PX 44, the Court should order that Jennifer Angerer's deposition be reopened and that the County Defendants be permitted to question Ms. Angerer regarding PX 44. The Court should disregard all arguments made by

Plaintiff in opposition to the County Defendants' motion to compel, as Plaintiff lacks standing to challenge the County Defendants' subpoena to Ms. Angerer. Even if the Court considers Plaintiff's arguments regarding Ms. Angerer's testimony, such arguments are without merit.

Respectfully submitted,

MATHIAS H. HECK, JR.
PROSECUTING ATTORNEY

By: /s/ Joseph D. Saks
Joseph D. Saks (0088082)
Alex J. Hale (0091682)
Assistant Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5705
Fax Number: (937) 225-4822
E-mail:
saksj@mcohio.org
halej@mcohio.org

Attorneys for Defendants Sheriff Robert Streck and Montgomery County Board of Commissioners

**CERTIFICATE OF SERVICE**

    I certify that on the 14th day of May, 2019, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants.

/s/Joseph D. Saks
Joseph D. Saks (0088082)